Douglas FISHEL, Sr., et al., Plaintiffs,

v.

**WESTINGHOUSE ELECTRIC CORPORATION, et al.,** Defendants.

Civ. A. No. 85–0216.

United States District Court, M.D. Pennsylvania.

May 23, 1986.

Rex F. Brien, Albert J. Slap, Gerald J. Williams, Slap, Williams & Cukor, Philadelphia, Pa., for plaintiffs.

Joseph G. Manta, Philadelphia, Pa., for Dow Chemical.

Jordan D. Cunningham, Harrisburg, Pa., for Sara Kulp and Wishard crossclaim plaintiff.

Thomas W. Scott, Killian & Gephart, Harrisburg, Pa., for defendant Frederick Shealer.

Pamela Shipman, Charles W. Rubendall, II, Harrisburg, Pa., for third party defendant Spectra-Kote.

Terry R. Bossert, McNees, Wallace & Nurick, Harrisburg, Pa., Jacob P. Hart, Philip J. Katauskas, Maida Rosenfeld Crane, Alison M. Benders, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant Westinghouse and crossclaim defendant.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

Plaintiffs have filed a motion for partial summary judgment against defendant, Frederick Shealer, seeking to establish that he: (1) violated the Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. § 6901 *et seq.*, by disposing of hazardous wastes without a permit and by maintaining an open dump; (2) violated the Clean Water Act of 1977 (CWA), 33 U.S.C. § 1251 *et seq.*, by discharging pollutants into the navigable waters of the United States from a point source without a permit; and (3) is responsible for certain plaintiffs' response costs under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA). 42 U.S.C. § 9601 *et seq.* Defendant opposes the motion.

### II. *Discussion.*

The claims arise from Shealer's disposal of chemical wastes in the Gettysburg, Pennsylvania area during an approximate ten year period. Shealer hauled such waste for various industrial companies, including defendant Westinghouse, to four sites in the area. These sites are: (1) a property owned by defendant Shealer (the Hunterstown Road site); (2) a lagoon across the road from the Hunterstown Road site; (3) a property owned by defendant near his son's house (the "Shealer property") and; (4) a property owned by William and/or Sarah Culp (the "Culp property"). The plaintiffs are residential neighbors of these four sites who have been affected by environmental contamination resulting from Shealer's dumping activity.[1]

---

1. The complaint divides the neighbors into four groups. Group I adjoins the Westinghouse plant which Westinghouse used for certain disposal activities. Plaintiffs' claims against Westinghouse are discussed in *Fishel v. Westinghouse Electric Corp.,* 617 F.Supp. 1531 (M.D.Pa.1985).

Group II consists of neighbors of the Shealer and Culp properties. Groups III and IV live along the Hunterstown Road site and the lagoon but group IV has not yet had their wells contaminated by pollutants.

Before discussing plaintiffs' specific claims, we will note our standard of review when passing on a motion for summary judgment:

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, *Adickes v. Kress & Co.*, 398 U.S. 144 [90 S.Ct. 1598, 26 L.Ed.2d 142] (1970) and must resolve all reasonable doubts as to the existence of a genuine issue of material fact against the movant.

*Hersh v. Allen Products Company, Inc.*, 789 F.2d 230, 232 (3d Cir.1986).

A. *The RCRA Provisions.*

1. *Plaintiffs Have Not Shown That Shealer Violated the RCRA Bar on Open Dumping.*

Plaintiffs contend that Shealer has violated 42 U.S.C. § 6945(a) by dumping waste at all four sites. Section 6945(a) provides, in pertinent part, as follows:

Upon promulgation of criteria under section 6907(a)(3) of this title, any solid waste management practice or disposal of solid waste or hazardous waste which constitutes the open dumping of solid waste or hazardous waste is prohibited....

This subsection deals with the disposal of solid waste and hazardous waste and prohibits their open dumping only upon promulgation of criteria under section 6907(a)(3). Those criteria for solid waste disposal, 40 C.F.R. § 257.1 *et seq.*, were promulgated on September 13, 1979, and

for hazardous waste disposal, 40 C.F.R. § 260.1 *et seq.*, on May 19, 1980.

Shealer maintains that the records relied upon by plaintiffs to support the section 6945(a) claim deal with the EPA's and Pennsylvania Department of Environmental Resources's (Pa Der) investigation of his disposal of Westinghouse waste. Shealer stopped hauling that waste in December of 1979. Hence, plaintiffs have not shown a violation because the hazardous waste regulations had not yet been promulgated. Also, while the solid waste regulations had been promulgated by that time,[2] there is no evidence to show the number of times he may have violated the regulations and the extent of his violations in the brief period before he ended his transportation of Westinghouse waste in December of 1979. Plaintiffs counter that this does not matter as long as defendant was in violation of the regulations.

 We agree with defendant that plaintiffs have failed to show he violated section 6945(a) for the following reasons. Although hazardous wastes are considered solid wastes under the Act, see 42 U.S.C. § 6903(5), it is also clear that they are distinctly different from solid wastes. A hazardous waste is a solid waste, or combination of solid wastes, which, generally, poses a threat to human health or the environment. *Id.* As we read the records submitted in connection with plaintiffs' motion, they deal with disposal of hazardous wastes generated at the Westinghouse plant.[3] Hence, solid waste regulations, even if promulgated prior to Shealer's termination of hauling wastes for Westinghouse, would have no application to Shealer's hauling of hazardous wastes.[4] Additionally, since Shealer did stop such hauling in December of 1979, the subsequently promulgated hazardous waste regulations could not have applied and he could not have violated section 6945(a). *See Jones v.*

**2.** Defendant refers to the effective date of the regulations, December 12, 1979.

**3.** If solid wastes were involved, plaintiffs have not specifically set forth what they were. *See, e.g.,* the affidavit of Michael C. Havener (App. at

640) which makes reference only to hazardous wastes.

**4.** 40 C.F.R. § 257.1(c)(8) specifically provides that the criteria set forth in Part 257 "do not apply to hazardous waste disposal facilities."

*Inmont Corp.*, 584 F.Supp. 1425 (S.D. Ohio 1984).

### 2. *Shealer Has Violated RCRA Permit And Notification Provisions.*

■ 42 U.S.C. § 6925(a) provides, in pertinent part, that:

> Not later than eighteen months after October 21, 1976, the Administrator shall promulgate regulations requiring each person owning or operating an existing facility ... for the treatment, storage, disposal of hazardous waste ... to have a permit issued pursuant to this section. Such regulations shall take effect on the date provided in section 6930 of this title and upon and after such date the treatment, storage, or disposal of any such hazardous waste ... is prohibited except in accordance with such a permit.

Section 6930 provided that the effective date of the regulations was to be six months after their promulgation. The latter event took place on May 19, 1980. The effective date of the hazardous waste regulations was, accordingly, November 19, 1980, and "only one who owned or operated a hazardous waste disposal facility as of November 19, 1980 was required to obtain an operating permit and adhere to the standards in the regulations." *Jones, supra,* at 1431. Section 6930 additionally required that, ninety days after promulgation of the regulations, any person generating or transporting hazardous waste or owning or operating a facility for the treatment, storage or disposal of hazardous waste was to file a notification stating the location and general description of the activity and the hazardous waste handled.

Shealer argues that these provisions were not effective at the time he was hauling waste for Westinghouse. *Environmental Defense Fund, Inc. v. Lamphier,* 714 F.2d 331 (4th Cir.1983), disposes of this argument. In *Lamphier,* defendants, owner/operators of a hazardous waste disposal facility, attempted to avoid liability under sections 6925(a) and 6930 by asserting that

no wastes were brought to the site after the effective date of the regulations. The court found, however, that because wastes were stored on the site after the effective date, it was immaterial that no wastes were deposited after that date.

The situation here is similar. Shealer certainly owned and operated three of the sites and was storing Westinghouse hazardous waste on them as of November 19, 1980. Hence, he has violated sections 6925 and 6930.[5]

### 3. *Plaintiffs Have Not Shown Shealer Has Violated RCRA's Imminent And Substantial Endangerment Provision.*

42 U.S.C. § 6972(a)(1)(B) provides, in pertinent part, as follows:

> any person may commence a civil action on his own behalf—
>
> . . . .
>
> (B) against any person ... and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment. . . .

Plaintiffs contend that the EPA investigation carried out in 1984 justifies injunctive relief against Shealer under this section because an imminent and substantial endangerment to health or the environment exists at all four dump sites. Defendant asserts that there is no such endangerment, and hence relief under this section is not available, because Westinghouse has cleaned up the dangerous wastes after the CERCLA order of March 22, 1984 was issued. Additionally, the provision of an alternative water supply has eliminated the most crucial concern to health. Defendant argues essentially that circumstances have

---

**5.** Shealer did not own the Culp property. It also cannot be said that he "operated" it within

the meaning of the regulations. (See 40 C.F.R. § 260.10 and Shealer deposition at 56).

changed and plaintiffs have not showed an imminent and substantial endangerment.

■ We do not believe that the remedial actions taken by Westinghouse in compliance with the government's order are determinative of whether an imminent and substantial endangerment currently exists but we also do not believe that the current record permits us to decide that issue. The documentation relied upon by plaintiffs, dating from 1984, is too old to be of probative value. Plaintiffs have supplied us with a copy of a government memorandum, dated March 12, 1986 dealing with the Shriver's corner site (probably the Culp property) but, unfortunately, have not authenticated the document or shown why it is self-authenticating. Under these circumstances, we decline to enter judgment for plaintiffs on the section 6972 claim.

### B. Shealer Has Violated the CWA In Permitting Hazardous Wastes to Discharge Into the Waters of the United States From a Point Source.

Plaintiffs, through 33 U.S.C. § 1365(a), the citizens' suit provision of CWA, have alleged that Shealer violated an effluent limitation imposed by the Act by permitting a discharge of pollutants from his lagoon into a nearby stream without a permit. See 33 U.S.C. §§ 1311(a), 1342. In pertinent part, § 1362(12) defines "discharge of a pollutant" as follows: "any addition of any pollutant to navigable waters from any point source." "Point source," in turn, has been defined, in pertinent part, as:

> any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container....

33 U.S.C. § 1362(14).

Defendant contends that the overflow from the lagoon was not from a point source. According to defendant, the documentary evidence submitted by plaintiffs establish only that there were discharges of unchannelled and uncollected surface waste from the lagoon into the stream. These overflows would not have been from a point source as defined in the Act. Plain-

tiffs reply that "point source" has been construed liberally by the courts to include the run over of wastes from a lagoon, which Shealer acknowledges. (Shealer deposition at 34).

■ The following language from O'Leary v. Moyer's Landfill, Inc., 523 F.Supp. 642, 655 (E.D.Pa.1981), is appropriate here:

> The essence of a point source discharge is that it be from a "discernible, confined, and discrete conveyance." 33 U.S.C. § 1362(14). Contrary to defendants' assertions, this has nothing to do with the intent of the operators or the reasonableness of the existing collection system. See generally Sierra Club v. Abston Construction Co., 620 F.2d 41, 45–46 (5th Cir.1980). Notwithstanding that it may result from such natural phenomena as rainfall and gravity, the surface run-off of contaminated waters, once channeled or collected, constitutes discharge by a point source. Sierra Club, 620 F.2d at 47. When a leachate collection system fails because of flaws in the construction or inadequate size to handle the fluids utilized, with resulting discharge, whether from a fissure in the dirt berm or overflow of a wall, the escape of liquid from the confined system is from a point source. United States v. Earth Sciences, Inc., 599 F.2d 368, 374 (10th Cir.1979). The discharges here from, inter alia, (1) overflowing ponds, (2) collection-tank bypasses, (3) collection-tank cracks and defects, (4) gullies, trenches, and ditches, (5) broken dirt berms, all constitute point source discharges. See United States v. Oxford Royal Mushroom Products, 487 F.Supp. 852, 854 (E.D.Pa.1980). Accordingly, I find the landfill and its operators in violation of the Clean Water Act.

We accept the rationale of O'Leary and conclude that the overflows in the instant case were from discernible, confined and discrete conveyances. We recognize that Shealer did not intend that the discharges take place, but the CWA is a strict liability

statute. *See Stoddard v. Western Carolina Regional Sewer Authority*, 784 F.2d 1200 (4th Cir.1986).

### C. *Shealer Is Liable for Response Costs Under CERCLA.*

Plaintiffs seek to impose liability for their CERCLA response costs upon defendant with a determination at a later proceeding of the amount of the costs. The CERCLA claim is based upon 42 U.S.C. § 9607(a)(2), (3) and 4(B) which provides, in pertinent part, as follows:

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement or otherwise arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, ... shall be liable for—

....

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan....

Defendant contends summary judgment is inappropriate only because he believes that none of the plaintiffs have incurred response costs. But if this is so, defendant may produce evidence to that effect at a later proceeding and defeat plaintiffs' claim. Currently, we believe that partial summary judgment on liability is appropriate based upon the record considered in our previous memorandum in which we concluded that Westinghouse should be liable for response costs. *See Fishel v. Westinghouse, supra,* at 1541. Accordingly, we will enter partial summary judgment against defendant on plaintiffs' CERCLA claim.

### D. *Claim For Attorney's Fees, Civil Penalties and Injunctive Relief*

 Plaintiffs have requested their attorney's fees and civil penalties authorized under CWA, *see* 33 U.S.C. § 1319(d) and RCRA, *see* 42 U.S.C. § 6928(g), and injunctive relief under CWA. At this time we will not grant any of these requests. First, while it is true, as plaintiffs have pointed out, that defendant has not contested the amount of attorney's fees claimed, we prefer to handle the request for fees in a collateral motion in which the request for fees can be thoroughly discussed and opposed. Second, plaintiffs have only set forth in conclusional terms their claim for maximum civil penalties under CWA and RCRA. They have not adequately briefed this issue and since the amount of any civil penalty awarded is within our sound discretion,[6] *see, e.g., Stoddard, supra; Chesapeake Bay Foundation v. Gwaltney of Smithfield, Ltd.,* 611 F.Supp. 1542 (E.D. Va.1985), this issue too should be explored in greater detail. Finally, plaintiffs have not set forth the injunctive relief they desire. We cannot enjoin defendant until it has been determined what conduct he should undertake to remedy the environmental problems. Accordingly, this relief is denied.

We will issue an appropriate order.

### ORDER

AND NOW, this 23rd day of May, 1986, it is ordered that partial summary judgment on liability is entered in favor of:

1. Group II plaintiffs on their claim for response costs under CERCLA, 42 U.S.C. § 9607(a).

2. Group III and IV plaintiffs on their RCRA claims under 42 U.S.C. §§ 6925(a) and 6930, CWA claims under 42 U.S.C. § 1365(a), and CERCLA claims under 42 U.S.C. § 9607(a).

---

**6.** The statutory sections provide for awards "up to" $10,000 for CWA and $25,000 for RCRA.