[No. B097891. Second Dist., Div. Six. Aug. 19, 1996.]

THE PEOPLE, Plaintiff and Appellant, v.
BUENA VISTA MINES, INC., et al., Defendants and Respondents.

## COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Linda C. Johnson and James G. Root, Deputy Attorneys General, for Plaintiff and Appellant.

Melvin De La Motte, Jr., for Defendants and Respondents.

## OPINION

YEGAN, J.—Water Code section 13387, subdivision (c) provides that a water polluter who "knowingly" violates section 13387, subdivision (a), shall be punished by a fine of not less than $5,000 nor more than $50,000 for each day of violation or by imprisonment for not more than three years, or by both. Neither the word, "felony" nor the words, "state prison" are used in the statute. Relying on *In re Humphrey* (1923) 64 Cal.App. 572 [222 P. 366], the superior court ruled that violation of Water Code section 13387, subdivision (c), is a misdemeanor.[1]

When section 13387 is viewed in its entirety, it is apparent that the Legislature intended that a violation of section 13387, subdivision (c), be punishable as a felony. This is so notwithstanding the failure to designate the offense by use of the word, "felony" or to use the words, "state prison." As we shall explain, any other holding would be an absurdity. Out of an abundance of caution, the Legislature should modify section 13387 to bring it into conformity with Penal Code section 17.

We need not dwell upon the facts or procedural posture of the case. It is sufficient to observe that the Attorney General has exercised prosecutorial discretion and charged defendants with feloniously and knowingly polluting Las Tablas Creek, which flows into Lake Naciemento.

[1]All statutory references are to the Water Code unless otherwise stated.

In ruling that a violation of section 13387, subdivision (c) was a misdemeanor, the superior court relied upon Penal Code section 17, subdivision (a), which provides: "A felony is a crime which is punishable with death or by imprisonment in state prison. Every other crime or public offense is a misdemeanor except those offenses that are classified as infractions." Also pertinent is Penal Code section 19.2 which, generally speaking, limits the time of incarceration to one year in county jail. The superior court also relied upon a leading text on criminal law: "If the statute does not characterize the crime as either a felony or a misdemeanor, but specifies a punishment, that becomes the test. If the statute calls for imprisonment in the state prison, the offense is a felony. [Citations.] If such imprisonment is not specified, the offense can only be a misdemeanor or infraction [Citation.]" (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Introduction to Crimes, § 75, pp. 91-92.)

For this later proposition, Witkin and Epstein rely upon *In re Humphrey*, *supra*, 64 Cal.App. 572. Humphrey was a bootlegger in the days of prohibition. He was convicted of violating the Wright Act which adopted by reference the federal Volstead Act and its penal provisions. Upon conviction with a prior, Humphrey was sentenced to state prison and ordered to serve " '. . . not less than one month nor more than five years.' " (*Id.* at p. 573.) He successfully petitioned for a writ of habeas corpus on the theory that his imprisonment in state prison violated Penal Code section 17. This punishment scheme was peculiar, even in the days of the indeterminate sentence law, because of the minimum one-month provision. This peculiarity, perhaps, resulted from the sui generis nature of the prohibition laws.

The simple but enigmatic sentencing scheme in *In re Humphrey* is to be contrasted with the escalating punishments for violation of section 13387, subdivision (a), as specified in subdivisions (b) through (d). Subdivision (b) provides punishment for those who "negligently" violate the section, i.e. ". . . a fine of not less than five thousand dollars ($5,000), nor more than twenty-five thousand dollars ($25,000), . . . or by imprisonment for not more than one year in the county jail, or both." With a qualifying prior, a subsequent "negligent" offense is punishable by doubling the maximum fine ". . . or by imprisonment of not more than two years, or by both."

Section 13387, subdivision (c) provides a greater punishment for those who "knowingly" violate the section, i.e. ". . . by a fine of not less than five thousand dollars ($5,000), nor more than fifty thousand dollars ($50,000), . . . or by imprisonment for not more than three years, or by both." With a qualifying prior, a "knowing" offense is punishable by doubling the maximum fine or by "imprisonment of not more than six years, or by both."

Section 13387, subdivision (d)(1) provides an even greater punishment for those who "knowingly" violate the statute by placing another person in imminent danger of death or serious bodily injury, i.e. by ". . . a fine of not more than two hundred fifty thousand dollars ($250,000) or imprisonment of not more than 15 years, or both." With a qualifying prior, a subsequent offense is punishable by doubling the maximum fine ". . . or imprisonment of not more than 30 years, or both."

This punishment scheme tracks the analogous Federal Water Pollution Control Act. (33 U.S.C. § 1251 et seq.; see § 13370, subd. (c).) The analogous federal prohibition provides, in pertinent part: "Any person who [¶] (A) knowingly violates section 1311, . . . or [¶] (B) knowingly introduces . . . any pollutant . . . shall be punished by a fine of not less than $5,000 nor more than $50,000 per day of violation, or by imprisonment for not more than 3 years, or by both." With a qualifying prior, a subsequent "knowing" violation is punishable by doubling the maximum fine "or by imprisonment of not more than 6 years, or by both." (33 U.S.C. § 1319(c)(2).) Pursuant to federal law, where the penalty is less than five years but more than one year, the offense is a class E felony. (18 U.S.C. § 3559; see also *Barde* v. *United States* (6th Cir. 1955) 224 F.2d 959.) The California penalty scheme does not have a classification of felonies. Thus, when the Legislature attempted to track the federal scheme, it did not fully appreciate the theoretical gap it created by not inserting the word, "felony," or the words, "state prison," in the statute.

We once again attempt to ascertain legislative intent. (E.g., *Yoshisato* v. *Superior Court* (1992) 2 Cal.4th 978, 989 [9 Cal.Rptr.2d 102, 831 P.2d 327].) This court is loathe to construe a statute which has the effect of "adding" or "subtracting" language. (*Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1097 [282 Cal.Rptr. 841, 811 P.2d 1025].) Here we have no choice. We either construe the statute to add the word "felony" or the words "state prison" or subtract all the penalties in excess of one year. We are compelled to add language only in extreme cases where, as a matter of law, we are convinced that the Legislature, through inadvertence, failed to utilize the word or words which give purpose to its pronouncements. (*Unzueta* v. *Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1698-1699 [8 Cal.Rptr.2d 614].) We may consider ". . . the consequences that will flow from a particular interpretation." (*Dyna-Med., Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323]; *People* v. *Cruz* (1996) 13 Cal.4th 764, 782 [55 Cal.Rptr.2d 117, 919 P.2d 731].)

■ Our Supreme Court has said: " 'We have declined to follow the plain meaning of a statute only when it would inevitably have frustrated the

manifest purposes of the legislation as a whole or led to absurd results. [Citation.]' " (*Wells Fargo Bank* v. *Superior Court, supra,* 53 Cal.3d 1082, 1098; see also *California School Employees Assn.* v. *Governing Board* (1994) 8 Cal.4th 333, 340 [33 Cal.Rptr.2d 109, 878 P.2d 1321]; *People* v. *Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr. 278, 856 P.2d 1134].) Here it is debatable whether there is a "plain meaning" with respect to section 13387. Assuming that there is, viewing section 13387 as a whole, the manifest purpose of the statute would inevitably be frustrated were we to conclude that each of the proscribed punishments result in misdemeanor sentences.

We may consider the "wider historical circumstances" in construing an enactment. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra,* 43 Cal.3d at p. 1387; *People* v. *Cruz, supra,* 13 Cal.4th at p. 783.) Given the California history of water law and the Legislature's posture with respect thereto (see, e.g., *National Audubon Society* v. *Superior Court* (1983) 33 Cal.3d 419, 433 et seq. [189 Cal.Rptr. 346, 658 P.2d 709] [public trust doctrine]), it is too late in the judicial day for us to believe that the Legislature intends that maximum punishment for a "knowing" stream polluter is one year in county jail. One commentator has concluded that section 13387 contains "felony-level penalties." (Johnson, State and Local Environmental Criminal Enforcement (ALI-ABA 1990) pp. 34-35.)

A reasonable reading of the escalating scheme of penalties in section 13387 could not lead one to believe that the Legislature intended each and every violation to be a misdemeanor. Yet, if we are to credit defendant's theory, this would be the logical result for nowhere in the California scheme are the words "felony" or "state prison" used.

The most extreme case demonstrates the absurdity of defendant's contention: "knowing" pollution which places another in imminent danger of death or serious bodily injury would be punishable as a misdemeanor. By operation of Penal Code section 19.2, punishment would be limited to one year in the county jail. This would erase 29 years of imprisonment which the Legislature determined was the appropriate penalty for such conduct. This statutory construction would collapse all knowing violations and their punishments to a negligence standard with its county jail punishment. This would be an absurdity.

This is exactly the result for which appellant prays: "That portion of the statute [in excess of one year] which provides for imprisonment for up to three years is therefore invalid." Were we to credit this theory, two years of

the imprisonment which the Legislature determined was the appropriate penalty, would be erased. If this penal sanction stood alone, the analogy to *In re Humphrey* might be apt. This is not the present situation. ■ " 'A statute must be construed "in the context of the entire statutory system of which it is a part, in order to achieve harmony among the parts." [Citation.]' " (*People* v. *Hull* (1991) 1 Cal.4th 266, 272 [2 Cal.Rptr.2d 526, 820 P.2d 1036].) We strive to give significance " ' ". . . to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." [Citation.]' " (*DuBois* v. *Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388 [20 Cal.Rptr.2d 523, 853 P.2d 978]; see also *People* v. *Cruz, supra,* 13 Cal.4th at p. 782.)

■ Section 13387, subdivision (b)'s designation of county jail for a first "negligent" violation of the section is significant and shows where the Legislature drew the line between misdemeanor and felony. While it certainly would have been better drafting to thereafter designate imprisonment in "state prison" for not more than two years for a subsequent negligent violation with a qualifying prior, and for not more than three years for a knowing violation, etc., the failure to do so should not be determinative. Were we to statutorily construe otherwise, such would have the effect of adding the phrase, "in the county jail," after the maximum penalties in section 13387, subdivisions (c) and (d). We certainly should not add what the Legislature has subtracted. The original version of section 13387, added by Statutes 1972, chapter 1256, section 1, page 2488, proscribed willful or negligent polluting. A first violation was punishable ". . . by imprisonment for no more than one year in the county jail. . . ." With a prior, it was punishable" . . . by imprisonment or not more than *two years in the county jail. . . .*" (Italics added.) Subsequently, the Legislature removed the phrase, "in the county jail," from the penalty scheme with the exception of the first portion of section 13387, subdivision (a).

■ We acknowledge our Supreme Court's direction that "[i]t is the policy of this state to construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit; just as in the case of a question of fact, the defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute. [Citation.]" (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617]; *People* v. *Garfield* (1985) 40 Cal.3d 192, 200 [219 Cal.Rptr. 196, 707 P.2d 258].) This rule is but a variation of the maxim of jurisprudence which we here utilize: "Interpretation must be reasonable." (Civ. Code, § 3542.)

■ We do not abandon our common sense when we become judges. The Legislature could have enacted section 13387, subdivisions (c) and (d) to

track the federal statute while at the same time adding the word "felony" or the words "state prison." Its failure to do so cannot reasonably be construed to render these offenses misdemeanors.

The judgment is reversed.

Stone (S. J.), P. J., and Gilbert, J., concurred.