Opinion
 

 YEGAN, J.
 

 The People appeal from an order denying a motion to reinstate a felony complaint (Pen. Code, § 871.5) for violation of the Porter-Cologne Water Quality Control Act. (Wat. Code, § 13387, subd. (a)(4).)
 
 [1]
 
 Respondents, Buena Vista Mines, Inc., and Harold J. Biaggini (hereafter defendant), pumped 180,000 gallons of acid-contaminated water from a holding pond
 
 *1201
 
 into Las Tablas Creek which flows into Lake Nacimiento. The magistrate dismissed the charge based on the finding that defendant’s conduct was legally justified under the doctrine of necessity. We reverse.
 

 Defendant owns an inactive mercury mine in San Luis Obispo County. The mine, initially opened in 1866, was shut down in 1970. For more than 20 years, acid-contaminated water has drained from the mine into Las Tablas Creek. The California Regional Water Quality Control Board (RWQCB) ordered defendant to stop discharging water or treat the water before it was released into the creek.
 

 In 1994 defendant constructed an earthen holding pond to capture the mine water and evaporate it. The pond was built from an existing cattle pond, dug 12 feet deep, and designed to hold 1,500,000 gallons of acid-contaminated water.
 

 In early 1995, San Luis Obispo County experienced heavy rains. Defendant inspected the pond on March 24, 1995, and noticed that the water was one inch from the top. Using a water pump, he pumped out 180,000 gallons and lowered the water level about 18 inches.
 

 David Schwartzbart, an engineering geologist for the RWQCB, observed the water run down a concrete channel into the Las Tablas Creek. Schwartzbart tested the water and determined that it was highly acidic.
 

 In an amended felony complaint, it was alleged that defendant intentionally violated the Federal Water Pollution Control Act (33 U.S.C. § 1311) by discharging pollutants into the creek. (Count I; Wat. Code, § 13387, subd. (a)(4).)
 

 Defendant asserted an affirmative defense at his preliminary hearing. He testified that he pumped water out of the pond to avert an environmental disaster. He feared that the pond’s earthen wall would burst and release 1,500,000 gallons of contaminated water.
 

 After the criminal charges were brought, defendant constructed a second pond that had a 1,200,000-gallon capacity. He also installed a treatment facility that could treat 10,000 gallons of water per day. He stated: “It wasn’t able to clean the water good enough for the specs the Water Control Board had given me.” Defendant claimed that he lacked the financial resources to conduct an engineering study to determine what steps were necessary to bring the water discharge into compliance with RWQCB specifications. The estimated cost of the study was between $50,000 and $1.2 million.
 

 
 *1202
 
 The magistrate dismissed the violation of Water Code section 13387, subdivision (a)(4), on the ground that defendant had established a defense of necessity. The People unsuccessfully moved to reinstate the felony complaint and appealed. (Pen. Code, § 871.5.)
 

 On review, the magistrate’s findings of fact will be sustained if supported by substantial evidence.
 
 (People
 
 v.
 
 Slaughter
 
 (1984) 35 Cal.3d 629, 639-640 [200 Cal.Rptr. 448, 677 P.2d 854];
 
 People
 
 v.
 
 McGlothen
 
 (1987) 190 Cal.App.3d 1005, 1012 [235 Cal.Rptr. 745].) However, here, as a matter of law, the facts credited by the magistrate do not establish a necessity defense.
 

 To assert a defense of necessity, the defendant must show, by a preponderance of the evidence, that he or she “violated the law (1) to prevent a significant and imminent evil, (2) with no reasonable legal alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief that the criminal act was necessary to prevent the greater harm, (5) with such belief being objectively reasonable, and (6) under circumstances in which [he or] she did not substantially contribute to the emergency. [Citations.]”
 
 (People
 
 v.
 
 Kearns
 
 (1997) 55 Cal.App.4th 1128, 1135 [64 Cal.Rptr.2d 654]; see also
 
 People
 
 v.
 
 Pepper
 
 (1996) 41 Cal.App.4th 1029, 1035 [48 Cal.Rptr.2d 877]; CALJIC No. 4.43.)
 

 No case has held that the common law defense of necessity applies to a violation of Water Code section 13387, subdivision (a)(4).
 
 [2]
 
 Assuming, without deciding, that the necessity defense applies in theory, the People argue that the sixth element, i.e., the defendant did not substantially contribute to the emergency, was not proven. We agree. As a matter of law, on this record, defendant substantially contributed to the emergency by storing contaminated water in an inadequately sized open pond.
 

 Because the pond was a “point source” under the Federal Water Pollution Control Act, defendant was prohibited from discharging the water without a permit. (33 U.S.C. § 1362(14);
 
 Washington Wilderness Coalition
 
 v.
 
 Helca Min. Co.
 
 (E.D.Wash. 1994) 870 F.Supp. 983, 988 [size of the pond is irrelevant].)
 

 
 *1203
 
 The Federal Water Pollution Control Act defines “point source” as “any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged.” (33 U.S.C. § 1362(14).)
 

 “The essence of a point source discharge is that it be from a ‘discernible, confined, and discrete conveyance.’ [Citation.] Contrary to defendants’ assertions, this has nothing to do with the intent of the operators or the reasonableness of the existing collection system. [Citation.] Notwithstanding that it may result from such natural phenomena as rainfall and gravity, the surface run-off of contaminated waters, once channeled or collected, constitutes discharge by a point source. [Citation.] When a leachate collection system fails because of flaws in the construction or inadequate size to handle the fluids utilized, with resulting discharge, whether from a fissure in the dirt berm or overflow of a wall, the escape of liquid from the confined system is from a point source. [Citation.] The discharges here from,
 
 inter alia,
 
 (1) overflowing ponds, (2) collection-tank bypasses, (3) collection-tank cracks and defects, (4) gullies, trenches, and ditches, (5) broken dirt berms, all constitute point source discharges. [Citations.]”
 
 (Fishel
 
 v.
 
 Westinghouse Elec. Corp.
 
 (M.D.Pa. 1986) 640 F.Supp. 442, 446 .)
 

 Defendant contends that he lacked the funds to conduct an engineering study or treat the water. Financial impossibility is not a defense in a hazardous waste case. (E.g.,
 
 People
 
 v.
 
 Taylor
 
 (1992) 7 Cal.App.4th 677, 690-691 [9 Cal.Rptr.2d 227].) Because the Porter-Cologne Water Quality Control Act is patterned after the Federal Water Pollution Control Act (33 U.S.C. § 1251 et seq.), we look to federal authority in construing the act.
 
 (People
 
 v.
 
 Buena Vista Mines, Inc., supra,
 
 48 Cal.App.4th 1030, 1034.) Economic or business necessity is not a recognized defense.
 
 (U.S.
 
 v.
 
 Boldt
 
 (1st Cir. 1991) 929 F.2d 35, 41.)
 

 To successfully assert a necessity defense, defendant also had to show he had no reasonable legal alternative, i.e., the second element of test articulated by
 
 People
 
 v.
 
 Kearns, supra,
 
 55 Cal.App.4th 1128, 1135. (E.g.,
 
 People
 
 v.
 
 Morris
 
 (1986) 181 Cal.App.3d Supp. 8, 11 [226 Cal.Rptr. 544].) Rather than treat the water, defendant stored the water in an open pond months before the March 1995 storm. Anticipating that the pond might overflow, he installed a large water pump and constructed a concrete channel.
 

 As a matter of law, on this record, defendant did not exhaust all reasonable alternatives. Had a treatment facility been installed and operating before
 
 *1204
 
 the March rains, an emergency would have been avoided. The evidence further indicated that defendant could have sooner built a larger or second pond to prevent an overflow and to speed up the evaporation. “The commission of a crime cannot be countenanced where there exists the possibility of some alternate means to alleviate the threatened greater harm. [Citation.]”
 
 (People
 
 v.
 
 Patrick
 
 (1981) 126 Cal.App.3d 952, 960 [179 Cal.Rptr. 276].)
 

 Assuming that some discharge was necessary to avert the dam from breaking on March 24, 1995, the evidence did not support the finding that defendant utilized the least harmful alternative. (E.g.,
 
 People
 
 v.
 
 Raszler
 
 (1985) 169 Cal.App.3d 1160, 1165-1166 [215 Cal.Rptr. 770].) Defendant started the pump after the rain stopped and pumped 180,000 gallons of untreated water in 4 hours. The record is unclear whether the discharge of 180,000 gallons, as opposed to a lesser quantity, was just enough or too much. Defendant testified that he lowered the pond by eighteen inches so he would not have to come back “within the next three or four days [and] pump it again.” The prospect of future rain did not give him a license to continue pumping once the rain stopped.
 

 “Necessity is an affirmative public policy defense, in effect a plea in avoidance and justification, which comes into focus only after all elements of the offense have been established.”
 
 (People
 
 v.
 
 Waters
 
 (1985) 163 Cal.App.3d 935, 938 [209 Cal.Rptr. 661].) Defendant stored acid-contaminated water in an inadequately sized open pond and had weeks, if not months, to consider alternative courses of conduct. Defendant could not maintain the inadequately sized contaminated pond and then successfully claim necessity in heavy rains. Based on the evidence presented, the magistrate erred as a matter of law in finding that the discharge of acid-contaminated water, all 180,000 gallons of it, was legally justified.
 

 The judgment (order denying the People’s motion to reinstate count I of the felony complaint) is reversed.
 

 Stone (S. J.), P. J., and Gilbert, J., concurred.
 

 [1]
 

 This is the third time we have considered this case. (See
 
 People
 
 v.
 
 Buena Vista Mines, Inc,
 
 (June 17, 1996) B096634 [nonpub.opn.];
 
 People
 
 v.
 
 Buena Vista Mines, Inc.
 
 (1996) 48 Cal.App.4th 1030 [56 Cal.Rptr.2d 21] filed Aug. 19, 1996.)
 

 [2]
 

 Defendant is alleged to have “intentionally” violated Water Code section 13387, subdivision (a)(4). The penalty therefor is substantial.
 
 (People
 
 v.
 
 Buena Vista Mines, supra,
 
 48 Cal.App.4th 1030,1033-1034.) This crime has a scienter requirement. It is not a strict liability offense or public welfare offense.
 
 (People
 
 v.
 
 Simon
 
 (1995) 9 Cal.4th 493, 519-522 [37 Cal.Rptr.2d 278, 886 P.2d 1271].) At oral argument the Attorney General so conceded. If violation of this code section were a strict liability offense (see 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Elements of Crime, § 110, pp. 129-131), there would be no defense at all; simply doing the act would be the crime.