[No. B128065. Second Dist., Div. Four. Mar. 30, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES ALLEN RAMSEY, Defendant and Appellant.

622

**COUNSEL**

Law Offices of Tara Selver and Tara Selver for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Mary Sanchez and Jim Hart, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CURRY, J.—**

### PROCEDURAL BACKGROUND

On or about November 13, 1997, an information was filed against appellant James Allen Ramsey, alleging that between December 16, 1996, and January 28, 1997, appellant discharged concrete and other materials into and near the Santa Clara River, and altered the banks of this river. Count 1 charged appellant with discharge of pollutants into navigable waters, which is a felony (Wat. Code, § 13387, subd. (c)). Counts 2 and 3 charged appellant with two misdemeanors, namely, illegal alteration of a streambed (Fish & G. Code, § 1603, subd. (a)), and littering of a stream bank (Pen. Code, § 374.7, subd. (a)). Appellant pleaded not guilty.

Trial by jury began on August 21, 1998. On August 31, 1998, the jury found appellant guilty on all three counts. The trial court placed appellant on formal felony probation for three years, provided that appellant serve the first 180 days in county jail, and suspended 150 days of this period in jail on the condition that appellant complete a 15-week weekend custody program and comply with the conditions of probation. In addition, the trial court imposed a fine of $5,000 plus a penalty assessment (Wat. Code, § 13387).

## FACTS

### A. *Prosecution Evidence*

On December 16, 1996, State Game Warden Michael Conley, responding to a complaint from Metrolink,[1] drove along a road on Metrolink property north of the Santa Clara River in Soledad Canyon. He observed that a large amount of broken concrete with rebar, together with tires and pieces of pipe, had been deposited along approximately 200 yards of the river's south bank on appellant's property. The debris lined a bend in the river and "butt[ed] right up against the water."

On January 28, 1997, Conley returned to the location with another state employee and found that the debris had been covered with sediment from the riverbed. He spoke with appellant, who took him on a tour of the property and explained the work that appellant had done. He told Conley that he was trying to reclaim property that he had lost and to stabilize the riverbank. Appellant further said that in mid-January, he had used a tractor to widen the stream and to push gravel from the riverbed onto the face of the bank. Conley told appellant that his conduct was unlawful, and that to make such changes he needed a streambed alteration agreement and he had to notify the Department of Fish and Game. Appellant stated that he was unaware that he needed an agreement.

In March 1998, Conley revisited the property and observed PVC pipe, barrels, paper, and other debris around trees near the riverbank. Conley had previously seen this debris in January 1997. During his inspections, Conley saw chunks of concrete lying in the streambed.

Steve Burger, a civil engineer for Los Angeles County, testified that appellant had made changes within the Santa Clara River floodplain. Property owners are generally notified by certified mail of the floodway boundaries on their property. Appellant had created a levee within the floodplain using debris, rocks, and trash. This levee had moved the riverbank approximately 225 feet and had narrowed the river channel, forcing the river to flow faster. The result was greater erosion of appellant's property and of Metrolink's property across the riverbed. The river's flow would easily carry away the broken concrete and other materials appellant had used.

Michael Giusti, a state biologist, testified that appellant's work had impaired the habitat of the three-spine unarmored stickleback, an endangered

---

[1]We take judicial notice that Metrolink is a railroad system operated by the Southern California Regional Rail Authority (Evid. Code, § 452).

species of fish found only in the Santa Clara River. Among other things, calcium carbonate from eroding pieces of concrete posed a hazard to the stickleback.

### B. *Defense Evidence*

Appellant testified on his own behalf. He stated that after Metrolink made changes to its property in 1993, his riverbank suffered increased erosion. In 1995, he decided to prevent this erosion by bringing large chunks of concrete and rock and burying them on his property. He placed the concrete approximately 20 to 25 feet away from the riverbank, and thus it had no immediate effect on the erosion. In January 1997, he pushed sand from the riverbed onto the concrete to widen the river and improve its flow. He denied extending his property, changing the river's course, littering the riverbank, or discharging concrete or other debris into the river.

Appellant conceded that he had once planned to build a campground on the property that extended to the riverbank, and that a construction company had paid him between $50,000 and $60,000 to dump debris on his property. He also conceded that in September 1996, Metrolink sent him a letter asking him whether he had a permit to change the riverbank and demanding that he restore the river channel.

### C. *Rebuttal*

In September or October 1997, Burger responded to a complaint that someone was dumping debris in Soledad Canyon, and saw a large truck dumping debris on appellant's property. Burger then told appellant that he needed a number of permits, including a streambed alteration agreement. Appellant said at first that he did not need any permits, and then agreed to submit plans for approval. Appellant never did so.

In March 1998, Conley observed tractor tire marks going into the river on appellant's property and saw appellant driving a tractor towards the river. Appellant got out of the tractor and stood behind it, occasionally coming out to the front of it, until Conley left.

### DISCUSSION

Appellant contends that (1) the trial court erred in failing to give an instruction on an element of discharging of pollutants into navigable waters, (2) the trial court erroneously failed to instruct the jury on an affirmative defense, and (3) appellant received ineffective assistance of counsel. Respondent contends that (4) the trial court improperly failed to impose mandatory penalty assessments.

## A. *Instruction on "Point Source"*

■ Appellant contends that the trial court failed to instruct the jury fully on the elements of discharging pollutants into navigable waters. We disagree.

■ Sections 13370 through 13389 of the Water Code were enacted to implement provisions of the Federal Water Pollution Control Act (33 U.S.C. § 1251 et seq.; hereafter the federal Act). (Wat. Code, § 13370.) Water Code section 13376 requires anyone who discharges, or proposes to discharge, a pollutant, dredged material, or fill into the navigable waters of the United States must file an appropriate report, unless the discharges are not subject to the federal Act. In certain situations, violations of this requirement are subject to criminal penalties. (*People v. Buena Vista Mines, Inc.* (1996) 48 Cal.App.4th 1030, 1034-1036 [56 Cal.Rptr.2d 21]; Wat. Code, § 13387, subd. (a).)

Generally, the federal Act regulates only discharges of pollutants from "point sources." (*People v. Buena Vista Mines, Inc.* (1998) 60 Cal.App.4th 1198, 1202-1203 [71 Cal.Rptr.2d 101].) This term, like the terms, "navigable waters," "pollutants," and "discharge," has the same meaning under the federal Act and the Water Code. (Wat. Code, § 13373.) The term "navigable water" encompasses any river or stream that is a tributary of tidal waters. (See *People v. Appel* (1996) 51 Cal.App.4th 495, 504 [59 Cal.Rptr.2d 216].) Concrete, rebar, sand, and similar waste materials are pollutants. (*U.S. v. West Indies Transport, Inc.* (3d Cir. 1997) 127 F.3d 299, 307-308; see *People v. Appel, supra,* 51 Cal.App.4th at p. 504; 33 U.S.C. § 1362(6).)

Under the federal Act, a "point source" is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." (33 U.S.C. § 1362(14).) This term has been broadly construed, even in actions involving criminal sanctions. (*People v. Buena Vista Mines, Inc., supra,* 60 Cal.App.4th at p. 1203 [holding pond containing contaminated water is a point source for purposes of criminal prosecution under Water Code]; *U.S. v. Oxford Royal Mushroom Products, Inc.* (E.D.Pa. 1980) 487 F.Supp. 852, 854 [irrigation system, coupled with broken berm, is a point source for purposes of criminal prosecution under federal Act].)

■ Here, the trial court instructed the jury on the elements of the offense of discharging a pollutant into navigable water, including the requirement "[t]hat a person knowingly discharged a pollutant or dredge or fill

material, or proposed to discharge a pollutant or dredge or fill material." In addition, the jury received instructions on the meaning of the terms "pollutant," "navigable waters," and "discharge of a pollutant." The instructions defined the meaning of the latter term as "any addition of any pollutant to navigable waters from any point source."

Appellant contends that the jury should have been further instructed on the meaning of the term "point source." In our view, appellant has waived this contention of error. ■ "[E]ven in the absence of a request, a trial court must instruct on general principles of law that are commonly or closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case. [Citations.]" (*People v. Montoya* (1994) 7 Cal.4th 1027, 1047 [31 Cal.Rptr.2d 128, 874 P.2d 903].) However, "the court is required to instruct sua sponte only on general principles which are necessary for the jury's understanding of the case. It need not instruct on specific points or special theories which might be applicable to a particular case, absent a request for such an instruction. [Citation.]" (*People v. Owen* (1991) 226 Cal.App.3d 996, 1004-1005 [277 Cal.Rptr. 341]; 5 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Trial, § 2925, pp. 3586-3587.)

Generally, the burden of requesting supplemental or clarifying instructions falls on the defendant, and failure to request such instructions waives the contention of error. (*People v. Lang* (1989) 49 Cal.3d 991, 1024 [264 Cal.Rptr. 386, 782 P.2d 627].) Here, the phrase "point source," as commonly understood, adequately conveys the statutory meaning, and thus the instructions given were a correct statement of the general principles applicable to the offense. (5 Witkin & Epstein, Cal. Criminal Law, *supra*, § 2939, at p. 3607 ["It is not necessary to instruct jurors on the meaning of words in common usage which are presumed to be within the understanding of a person of ordinary intelligence."].) Because appellant requested no clarifying or supplementary instructions, he has waived any claim of error on this issue.

■ Nonetheless, even if the trial court erred in failing to define "point source," this error was harmless. When the trial court erroneously fails to define a term essential to the elements of an offense, the test of prejudice is whether the error was harmless beyond a reasonable doubt. (*People v. Feinberg* (1997) 51 Cal.App.4th 1566, 1576-1577 [60 Cal.Rptr.2d 323]; see *People v. Flood* (1998) 18 Cal.4th 470, 489-491 [76 Cal.Rptr.2d 180, 957 P.2d 869].)

Here, there was no factual dispute that trucks hauled pieces of broken concrete to appellant's property, and appellant lined the river with this

concrete using a tractor. Appellant testified only that the concrete was set back from the river's flow, and that no concrete or other materials had moved into the river, but he admitted that the sand placed over the concrete had eroded. Instead, the key factual disputes centered on whether concrete or other pollutants had actually been discharged into the river water.

In view of this record, a rational jury could have concluded only that the concrete wall and the equipment that appellant used to build this wall were point sources, that is, "discernible, confined and discrete conveyance[s]" from which pollutants "may be discharged." (33 U.S.C. § 1362(14).) Channels from which pollutants may escape are point sources (*Fishel v. Westinghouse Elec. Corp.* (M.D.Pa. 1986) 640 F.Supp. 442, 446), as are earthmoving equipment (*U.S. v. Lambert* (S.D.W.Va. 1996) 915 F.Supp. 797, 802-803), including bulldozers working in a river channel (*U.S. v. Sinclair Oil Co.* (D.Mont. 1990) 767 F.Supp. 200, 204). Furthermore, the common understanding of the term "point source" would have conveyed to the jury, at minimum, that it needed to determine whether any pollutants entered the river from a specific source on appellant's property. Under these circumstances, it is inconceivable that a rational juror, properly instructed, could have found that there were no point sources on appellant's property, and thus the instructional error, if such it was, was harmless. (*People v. Feinberg*, *supra*, 51 Cal.App.4th at pp. 1576-1577.)

## B. *Failure to Instruct*

■ Appellant contends that the trial court erroneously failed to instruct the jury on the affirmative defense of accident or mistake with regard to the offense of discharging a pollutant into navigable waters. Again, we disagree.

"[A] trial court's duty to instruct, sua sponte, or on its own initiative, on particular defenses . . . , aris[es] 'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' [Citations.]" (*People v. Barton* (1995) 12 Cal.4th 186, 195 [47 Cal.Rptr.2d 569, 906 P.2d 531].) Here, appellant argues that an instruction on accident or mistake was required because there is substantial evidence that (1) he did not know that he was discharging what is legally defined as a pollutant, and (2) he intended by his actions to *prevent* the discharge of pollutants.

Regarding item (1), appellant concedes that the mistake at issue is one of law, and thus the central question is whether such a mistake is a defense to the offense. ■ "To constitute a good defense, the mistake must be one

that negatives the intent or other mental state that is an element of the crime." (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Defenses, § 219, p. 254.) Accordingly, the question posed here is closely tied to whether the offense at issue is a general or specific intent crime.

As our Supreme Court explained in *People v. Daniels* (1975) 14 Cal.3d 857, 860 [122 Cal.Rptr. 872, 537 P.2d 1232], " '[w]hen the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.' [Citation.]" (Quoting *People v. Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370].) Generally, a mistake of law is not a defense to a general intent crime, but in some circumstances it may be a defense to a specific intent crime. (1 Witkin & Epstein, Cal. Criminal Law, *supra*, §§ 218-219, pp. 251-253.)

Absent special circumstances, the occurrence of the terms "intentionally" and "knowingly" in a penal statute do not imply that the offense so defined is a specific intent crime. As a rule, the term "intentionally" requires only that the agent acted intentionally in engaging in the proscribed conduct, and not that the agent knew that the conduct was proscribed. (*People v. Honig* (1996) 48 Cal.App.4th 289, 336-337 [55 Cal.Rptr.2d 555].) Similarly, the term "knowingly" generally requires only that the agent know of the existence of the facts that constitute the offense, but not of the unlawfulness of his or her conduct. (*Ibid.*) "[K]nowledge of the unlawfulness of an act or omission is not required *unless* the Legislature has specifically decreed otherwise." (*Id.* at p. 337, italics added.)

Here, Water Code section 13387, subdivision (a), provides that "[a]ny person who intentionally or negligently does any of the following is subject to criminal penalties as provided in subdivisions (b), (c), and (d): [¶] (1) Violates Section . . . 13376. . . ." Subdivision (c) of section 13387 provides that "[a]ny person who knowingly commits any of the violations set forth in subdivision (a)" is guilty of a felony. (*People v. Buena Vista Mines, Inc., supra,* 48 Cal.App.4th at pp. 1034-1036.) Despite occurrence of the terms "intentionally" and "knowingly," Water Code section 13387 does not expressly indicate that knowledge that a material is a pollutant is an element

of the offense, and thus a mistake of law concerning this matter is not a defense.[2]

This conclusion finds additional support in case law holding that the analogous criminal offenses under the federal Act do not require knowledge that the discharged material is deemed a pollutant. (*U.S. v. Weitzenhoff* (9th Cir. 1993) 35 F.3d 1275, 1284, fn. 5.) Water Code section 13387 substantially tracks the language and structure of section 1319(c), 33 United States Code, which states the analogous offenses. In view of the Legislature's express intent to implement the federal Act, the Legislature is not likely to have imposed more stringent requirements on the criminal offenses under the Water Code than those found in the federal Act. Accordingly, the jury was properly instructed that discharging a pollutant in navigable waters "does not require an intent to violate the law" and that "it is no defense that [appellant] did not know that the act was unlawful or that he believed it to be lawful."[3]

Regarding (2), appellant's steadfast defense, as presented in his testimony and in closing argument, was that *no* pollutants had entered the river. Because an instruction regarding an accidental discharge was contrary to appellant's theory of the case, the trial court had no duty to give an instruction on accident or mistake. (*People v. Barton, supra*, 12 Cal.4th at p. 197.)

In sum, the failure to instruct on the affirmative defense of accident or mistake was not error.

## C. *Ineffective Assistance of Counsel*

Finally, appellant contends that his counsel, Gary Symonds, rendered ineffective assistance of counsel by permitting evidence of events after

---

[2]We recognize that the phrase "[a]ny person who knowingly commits any of the violations set forth in subdivision (a)" in subdivision (c) of Water Code section 13387, coupled with the phrase "intentionally or negligently" in subdivision (a) of the same section, invites speculation that the Legislature established a specific intent requirement for offenses under subdivision (c). We reject this speculation for two reasons. First, this speculation implies, by parity of reasoning, that offenses under subdivision (b) of section 13387, that is, *negligent* violations of the conduct listed in subdivision (a), also carry a specific intent requirement, even though criminal negligence is generally inconsistent with specific intent. (1 Witkin & Epstein, Cal. Criminal Law, *supra*, Elements of Crime, § 113, pp. 133-134.) Second, as we explain below, it is implausible that the Legislature intended to impose more stringent requirements on offenses under the Water Code than those found in the federal Act.

[3]To the extent that appellant may contend that the trial court should have given additional instructions amplifying these correct instructions, his contention is waived for failure to propose such instructions. (*People v. Lang, supra*, 49 Cal.3d at p. 1024.)

January 28, 1997, to be admitted at trial. Appellant's theory of ineffective assistance rests on two propositions: (1) to commit the misdemeanor of illegal alteration of a streambed (Fish & G. Code, § 12002, subd. (a)), one must have received formal notification that one must seek approval from the Department of Fish and Game to alter a riverbed; and (2) but for Symond's trial errors, evidence that appellant received notification of this requirement would not have been admitted at trial. We are not persuaded.

■ "In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citations.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citations.] Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*People v. Jennings* (1991) 53 Cal.3d 334, 357 [279 Cal.Rptr. 780, 807 P.2d 1009].)

Here, the information charges appellant with illegal conduct between December 16, 1996, and January 28, 1997. During the prosecutor's case-in-chief, the prosecutor sought to introduce testimony from Conley that in March 1998, he saw tractor tire marks going into the river on appellant's property and saw appellant working on a tractor near the river. Symonds objected to the testimony on the grounds of relevance. The prosecutor argued that Conley's proposed testimony concerning events after January 28, 1997, the final date of the charged offenses, was admissible under Evidence Code section 1101, subdivision (b), to show appellant's motive or intent. The trial court declined to rule on this contention, but concluded that the testimony would be unduly time-consuming and thus inadmissible under Evidence Code section 352. The prosecutor then proffered testimony from Burger that he told appellant about pertinent notification and permit requirements in September or October 1997. The trial court ruled that this testimony was also inadmissible under section 352.

When appellant testified in his own defense that he had not changed the course of the river, Symonds sought to admit a videotape prepared by appellant depicting his property at intervals between 1987 and March 1998. The videotape purported to show that appellant had made no material changes to the river's course. The trial court ruled that the videotape could be played as appellant described the scenes portrayed, but warned Symonds that it would open the door to cross-examination about the state of the property in March 1998, and to Conley's testimony about what he had seen

in March 1998. Symonds replied, "If that's it, she [the prosecutor] has to do it. She has to do it. We'll take that chance."

The videotape was played during appellant's testimony, and later, during cross-examination, appellant opened the issue of grading permits in a non-responsive answer to one of the prosecutor's questions. During subsequent cross-examination, appellant denied that Burger had told him about permits and notification requirements in 1997. The trial court then permitted Burger and Conley to testify in rebuttal concerning the events they had witnessed after January 28, 1997.

With respect to the adequacy of Symond's performance, the defendant in criminal proceedings has a right to testify "over the objection of, and contrary to the advice of, defense counsel. [Citations.]" (*People v. Bradford* (1997) 15 Cal.4th 1229, 1332 [65 Cal.Rptr.2d 145, 939 P.2d 259].) The record discloses that Symonds made a considered tactical decision, with appellant's evident approval, to present the videotape that appellant had prepared to corroborate his own testimony. In our view, it is not obvious that Symonds acted deficiently under these circumstances.

Nonetheless, it is unnecessary for us to resolve this issue because Symonds's conduct did not prejudice appellant. ▪ As we explain below, establishing illegal alteration of a streambed does not require proof of notification of permit requirements, and thus appellant's theory of ineffective assistance fails.

Fish and Game Code section 1603, subdivision (a), provides in pertinent part that "[i]t is unlawful for any person to substantially divert or obstruct the natural flow or substantially change the bed, channel, or bank of any river, stream, or lake designated by the department, or use any material from the streambeds, without first notifying the department of that activity . . . ." Violation of this provision is a misdemeanor. (Fish & G. Code, § 12000.)

The key issue raised by appellant's theory of ineffective assistance is the mens rea of this offense. ▪ "In general, in every crime there must exist a union or joint operation of act or conduct and criminal intent or criminal negligence. (Pen. Code, § 20.) As a further general proposition of criminal law, persons who commit an act through misfortune or by accident with no evil design, intention, or culpable negligence are not criminally responsible for the act. (Pen. Code, § 26, subd. Five.)" (*People v. Guinn* (1983) 149 Cal.App.3d Supp. 1, 9 [196 Cal.Rptr. 696].)

▪ However, illegal alteration of a streambed strongly resembles so-called public welfare or malum prohibitum crimes, which "are punishable despite the absence of any criminal intent or criminal negligence. [Citation.]"

(*People v. Guinn, supra*, 149 Cal.App.3d at p. Supp. 9.) ▮▮▮ "Under many statutes enacted for the protection of the public health and safety, e.g., traffic and food and drug regulations, criminal sanctions are relied upon even if there is no wrongful intent. These offenses usually involve light penalties and no moral obloquy or damage to reputation. Although criminal sanctions are relied upon, the primary purpose of the statutes is regulation rather than punishment or correction. The offenses are not crimes in the orthodox sense, and wrongful intent is not required in the interest of enforcement. [Citations.]" (*People v. Vogel* (1956) 46 Cal.2d 798, 801, fn. 2 [299 P.2d 850].)

▮▮▮ Environmental statutes that prohibit the storage or discharge of wastes without a permit have been deemed public welfare offenses. (*People v. Matthews* (1992) 7 Cal.App.4th 1052, 1057-1058 [9 Cal.Rptr.2d 348].) Here, section 1600 of the Fish and Game Code expressly indicates that the Legislature's intent in enacting section 1603 was to provide for the protection and conservation of fish and wildlife resources, a goal that the Legislature declared to be "of [the] utmost public interest." Accordingly, illegal alteration of a streambed has the appearance of a public welfare offense.

The language of Fish and Game Code section 1603 also supports an alternative understanding of the pertinent mens rea. Section 1603 lacks any reference to a specific intent, and thus the offense in question is plausibly interpreted as a general intent crime. (*People v. Daniels, supra*, 14 Cal.3d at pp. 860-861.) However, we do not need to resolve whether the offense at issue is a public welfare offense or general intent crime. On either alternative, knowledge that one's conduct is unlawful is not an element of the offense, and thus ignorance of the notification requirements of section 1603 is not a defense. (1 Witkin & Epstein, Cal. Criminal Law, *supra*, §§ 218-219, pp. 251-254.)

Appellant contends otherwise, citing an opinion of the Attorney General, which states without supporting analysis that a person violates Fish and Game Code section 1603 by "divert[ing] or obstruct[ing] a stream or river and then *willfully* fail[ing] to notify the Department of Fish and Game of his activity." (57 Ops.Cal.Atty.Gen. 475, 476 (1974), italics added.) This opinion does not support appellant's contention. Even if the opinion correctly imports the term "willfully" into a statement of the offense, this term does not transmute the offense into a specific intent crime for which ignorance of the notification requirements is a defense. (*People v. Mott* (1983) 140 Cal.App.3d 394, 402-403 [189 Cal.Rptr. 589] [ignorance of registration and disclosure requirements for marketing plan is not a defense to offense of "willfully" violating these requirements].)

Because appellant's ignorance of the notification requirements under Fish and Game Code section 1603 is irrelevant to whether he illegally altered a streambed, the admission of Conley's and Burger's rebuttal testimony was not prejudicial. The record discloses ample evidence supporting appellant's conviction that is independent of this rebuttal testimony. Accordingly, there is no reasonable probability that the outcome would have been more favorable to appellant had this evidence not been admitted. (*People v. Jennings, supra*, 53 Cal.3d at p. 357.)

### D. *Penalty Assessments*

Respondent contends that the judgment must be amended to reflect the imposition of penalty assessments under Penal Code section 1464 and Government Code section 76000. We agree.

As this court recently stated in *People v. Terrell* (1999) 69 Cal.App.4th 1246, 1256 [82 Cal.Rptr.2d 231], Penal Code "[s]ection 1464 concerns the imposition, calculation, collection, allocation, and distribution of the state penalty assessment on fines, penalties, and forfeitures. In pertinent part, it provides: 'Subject to Chapter 12 (commencing with Section 76000) of Title 8 of the Government Code, there shall be levied a state penalty, in an amount equal to ten dollars ($10) for every ten dollars ($10) or fraction thereof, upon every fine, penalty, or forfeiture imposed and collected by the courts for criminal offenses, including all offenses, except parking offenses as defined in subdivision (i) of Section 1463, involving a violation of the Vehicle Code or any local ordinance adopted pursuant to the Vehicle Code.' (§ 1464, subd. (a).)"

Furthermore, "Government Code section 76000 embodies the county penalty assessment 'upon every fine, penalty, or forfeiture imposed and collected by the courts for criminal offenses' with the exception of 'parking offenses subject to Article 3 (commencing with Section 40200) of Chapter 1 of Division 17 of the Vehicle Code.' (Gov. Code, § 76000, subd. (a).) The county penalty assessment for each county is 'an additional penalty of seven dollars ($7) for every ten dollars ($10) or fraction thereof which shall be collected together with and in the same manner as the amounts established by Section 1464[.]' (*Ibid.*)" (*People v. Terrell, supra,* 69 Cal.App.4th at pp. 1256-1257.)

These penalty assessments are mandatory. (*People v. Terrell, supra,* 69 Cal.App.4th at pp. 1255-1257.) Here, the record discloses that the prosecutor asked the trial court to impose a fine of $5,000 under Water Code section 13387, subdivision (c). In addition, the prosecutor sought additional mandatory penalties and assessments totaling $8,500, and made an apparent reference to *People v. Heisler* (1987) 192 Cal.App.3d 504, 506-507 [237

Cal.Rptr. 452],[4] which stands for the proposition that the trial court must impose assessments under Penal Code section 1464.[5] The trial court imposed a $5,000 fine "plus penalty assessment" under Water Code section 13387, subdivision (c), but did not expressly state the amount of the assessments to be imposed under Penal Code section 1464 or Government Code section 76000.

Because subdivision (c) of Water Code section 13387 mandates a fine of *at least* $5,000, the fine imposed does not include penalty assessments. Under the circumstances, it is unnecessary to remand the matter to the trial court for determination of the amounts of these assessments. (See *People v. Blessing* (1979) 94 Cal.App.3d 835, 838-839 [155 Cal.Rptr. 780].) Instead, we modify the judgment to reflect a $5,000 state and a $3,500 county penalty assessment.

## DISPOSITION

The judgment against appellant is modified to reflect that he is ordered to pay a $5,000 state penalty assessment (Pen. Code, § 1464) and a $3,500 county penalty assessment (Gov. Code, § 76000). The judgment is affirmed in all other respects.

Epstein, Acting P. J., and Berle, J.,* concurred.

---

[4]The record indicates that the prosecutor cited "*People v. Heizel*" in arguing that the penalties and assessments sought were mandatory.

[5]In view of the prosecutor's express request for $8,500 in mandatory assessments over and above the minimum fine, the issue presented has not been waived on appeal by a failure to raise the issue before the trial court. (Cf. *People v. Tillman* (2000) 22 Cal.4th 300 [92 Cal.Rptr.2d 741, 992 P.2d 1109] [waiver where prosecutor fails to ask trial court to impose penalty assessment].)

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.