Opinion
COOPERMAN, J.
This is an appeal by defendants following their conviction on August 20, 1981, after jury trial, for multiple violations of Business and Professions Code section 23300 (selling alcoholic beverages without a valid license).
Statement of the Case and Procedural History
On April 22, 1980, the People filed misdemeanor complaint No. Ml 11761 against defendant Guinn, charging him with two counts of violation of Business and Professions Code section 23300 on April 15, 1980, and with one count of violation of said section on April 17, 1980.
On April 23, 1980, the People filed misdemeanor complaint No. Ml 11764 as against defendants Coleman and Locker, charging them with *Supp. 4 five counts (counts I, IV, VI, VII and IX) of violation of Business and Professions Code section 25351 (unlawful possession of alcoholic beverage subject to seizure), and four counts (counts II, III, V, and VIII) of violation of Business and Professions Code section 23300, during the period from April 11, 1980, and April 17, 1980.
Count III of the complaint against defendant Guinn, charging violation of Business and Professions Code section 23300 by said defendant on April 17, 1980, was dismissed following motion by counsel for said defendant under the provisions of section 1118.1, Penal Code, for insufficiency of the evidence.
Counts I, IV, VI, VII and IX of the complaint against defendants Coleman and Locker, charging violations of Business and Professions Code section 25351, were dismissed by the court upon motion of the prosecution.
On August 11, 1981, jury trial commenced, concluding on August 20, 1981, with verdicts of guilty as to Guinn on counts I and II, and as to defendants Coleman and Locker, on counts II, III, V, and VIII, all charging violations of section 23300, Business and Professions Code.
On February 11, 1982, imposition of sentence on each of the defendants was suspended, and each was placed on summary probation for the period of two years, on the following terms and conditions:
1. Each defendant pay a fine and penalty assessment in the total amount of $800.
2. Each defendant shall comply with all rules and regulations of the Alcoholic Beverage Control Board.
On March 3, 1982, defendants, respectively, filed timely notices of appeal.
Statement of Facts
Appellants Locker and Coleman are the owners of a bar and restaurant featuring nude entertainment, commonly known as “The Other Ball,” located at 825 East Valley Boulevard, San Gabriel, California. Said appellants held a city business license issued by the City of San Gabriel for the year 1980. In addition, the California Department of Alcoholic Beverage Control (A.B.C.) had issued said appellants an on-sale license to sell alcoholic bev *Supp. 5 erages on the foregoing premises for the period January 1, 1980, to and including December 31, 1980. Appellant Guinn was a bartender at the establishment.
Appellant Locker and Joyce M. Locker were owners of a nightclub in Santa Monica, known as The Ball, in connection with which the A.B.C. had issued an on-sale license. Appellant Locker had been issued a caterer’s permit for the period January 1, 1980, through December 31, 1980, in conjunction with the foregoing on-sale license.
In January 1980, the A.B.C. issued notices of revocation of both of the above-mentioned on-sale licenses, to take effect January 31, 1980.
“Revocation of these licenses occurred subsequent to administrative hearings [conducted by the A.B.C.] and also subsequent to the decision of the Alcoholic Beverage Control Appeals Board . . . which affirmed the decision [of the A.B.C.], revoking appellant’s licenses. Appellants sought and were unsuccessful in attempting to seek relief in the California Court of Appeal by a writ of review. Further, appellants were denied injunctive relief by the United States District Court for the Central District of California sought on grounds that [the A.B.C.] was violating appellant’s due process and civil rights. Subsequently, on April 9, 1980, the United States Court of Appeal for the Ninth Circuit denied appellant’s request for a stay order preventing respondent from revoking appellant’s licenses pending the decision on their appeal in the Ninth Circuit.” (See Department of Alcoholic Beverage Control v. Locker (1982) 129 Cal.App.3d 381, 384 [181 Cal.Rptr. 55].)
On April 11, 1980, notice of revocation was served upon appellant Locker, with respect to the Santa Monica establishment. On the same date, at 2 p.m., the notice of revocation of license was served on appellant Coleman on the premises of “The Other Ball.” At that time, representatives of the A.B.C. advised appellant Coleman of the revocation of the on-sale license pertaining to The Other Ball, and removed said on-sale license from the premises of said establishment.
On the same day, April 11, 1980, appellant Locker signed a document purporting to authorize use of his catering permit on the premises of “The Other Ball. ” This document was posted behind the bar of “The Other Ball,” along with a photocopy of the caterer’s permit that had been issued to appellant Locker by the A.B.C. It was the position of appellants that, notwithstanding revocation of appellant’s on-sale license, sales of alcoholic beverages were authorized by virtue of appellant Locker’s unrevoked caterer’s permit. Appellant’s position concerning such use of the caterer’s permit, was based upon the advice of counsel.
*Supp. 6 On April 16, 1980, representatives of the A.B.C. picked up the photocopy of appellant Locker’s caterer’s permit, and the document signed by Locker purporting to authorize use of the caterer’s permit for the sale of alcoholic beverages, pursuant to a search warrant.
On April 11, April 12, April 15, and April 17, 1980, investigators for the A.B.C., in undercover capacities, ordered alcoholic beverages at the premises of “The Other Ball,” which they tasted and testified had the flavor of the alcoholic beverages they had ordered. The undercover officers also removed samples of said beverages which were later analyzed by a forensic chemist, who also testified in the proceedings below.[1]
Outside the presence of the jury, Attorney Ralph B. Saltsman testified on behalf of appellants. He stated that he had advised appellants that Locker’s catering permit would permit them to sell alcoholic beverages. He testified that he had advised appellants that they would first have to notify the Department of Alcoholic Beverage Control and get their advance permission to use of the caterer’s permit. He further testified that if consent were not received from the A.B.C. prior to use of the caterer’s permit, that the department would probably take some administrative action. In essence, it was Saltsman’s advice that once the catering permit had been received by a licensee, “. . .it was not necessarily a causal relationship between being a licensee and having the caterer’s permit.”[2]
Thereafter, appellant William Coleman testified as follows, on behalf of the defense, outside the presence of the jury:
“William Coleman, having been called as a witness on behalf of the Defense, testified as follows:
“Direct Examination
“By Mr. Goldman: Q. Mr. Coleman, can you state your occupation for the record?
“A. Pardon?
*Supp. 7 “Q. Your current occupation for the record?
“A. I am chief of security for Metro Media Square in Los Angeles.
“Q. Back in April of last year, did you consult an attorney by the name of Ralph Saltzman, the individual who just testified?
“A. Yes.
“Q. And in what regard did you consult him at that time?
“A. I consulted with him on the validity of a caterer’s permit held by Mr. Locker as to its application at the Other Ball in San Gabriel.
“Q. And did Mr. Saltzman give you some advice on that issue?
“A. Yes, he did.
Q. Do you recall what the advice was?
“A. Yes. I had told Mr. Saltzman that we didn’t want to do anything criminal and the people who worked under my direction would not do anything criminal.
“And he assured me there was nothing criminal to the aspect of serving liquor under the permit of Mr. Locker’s permit.
“He said if anything occurred, it would be an administrative proceeding.
“I further asked him, ‘Is it legal for me to sell alcoholic beverages under this caterer’s permit?’
“He said, ‘Yes, it is legal. There may be an administrative hearing into it, but there will be nothing criminal. You have a license to sell liquor.’
“Q. So it was your understanding, after your conversation with Mr. Saltzman, that you had a license under that catering permit to sell liquor on April 11th to April 17th of last year?
“A. Yes, I had that understanding, because that’s what he told me.
“Q. And how long have you known Mr. Saltzman?
“A. Approximately five years.
*Supp. 8 “Q. And have you relied on his advice on prior occasions?
“A. Yes.
“Q. Have you relied on the advice of the law firm that he is with on prior occasions?
“A. Yes. I had been represented by that law firm at that time for approximately thirteen and a half years.
“Q. And it was based on your advice and your prior representation by that counsel and counsel associated with that counsel that made your decision?
“A. Yes, of course. Based entirely on that advice and nothing more.”
Counsel for appellants offered to prove that appellants Guinn and Locker, if called to testify outside the presence of the jury, would testify substantially as had appellant Coleman.
The trial judge refused to permit the foregoing testimony of Attorney Saltsman and of appellants to be heard by the jury, in that it was his determination that the offense alleged was “a malum, prohibitum or strict liability type of violation and, therefore, good faith belief in what you have a right to do is not admissible.
“Advice of counsel is not admissible. Mistake of facts is not admissible.”
Appellants’ Contentions on Appeal
Appellants assert that the trial court erred as follows:
1. The trial court erroneously held that Business and Professions Code section 23300 was a strict liability, malum prohibitum crime, and that the defenses of advice of counsel and mistake of fact were inapplicable;
2. The trial court erred in giving jury instructions which did not accurately state the law relative to strict liability, mistake of fact, and aiding and abetting; and
3. The trial court erred in failing to timely grant the motions made pursuant to Penal Code section 1118.1 relative to the absence of identification of appellants and the lack of sufficient evidence to connect appellant Locker to the alleged crimes specified in the misdemeanor complaint.

*Supp. 9
Discussion

1. Section 23300 of the Business and Professions Code, for violation of which appellants were charged and convicted in the case at bench, is as follows: “No person shall exercise the privilege or perform any act which a licensee may exercise or perform under the authority of a license unless the person is authorized to do so by a license issued pursuant to this division.”
The trial judge ruled during the course of the trial, as a matter of law, that the foregoing statute defined a strict liability, malum prohibitum offense. He instructed the jury as follows:
“The alleged violations of section 23300 fall within that category of crimes wherein neither guilty knowledge nor intent of the defendants need be shown.
“The mere sale of specified types of alcoholic beverages without a then valid license from the state, if such be the case, constitutes the crime charged in each count.
“A good faith belief that one has a legal right to sell alcoholic beverages is not a legal defense to violations alleged herein if one, in fact, has no then valid license to sell alcoholic beverages.”
We find no error in the ruling of the trial court during trial, as a matter of law, nor do we find any instructional error.
In general, in every crime there must exist a union or joint operation of act or conduct and criminal intent or criminal negligence. (Pen. Code, §20.) As a further general proposition of criminal law, persons who commit an act through misfortune or by accident with no evil design, intention, or culpable negligence are not criminally responsible for the act. (Pen. Code, § 26, subd. Five.)
Exceptions to the foregoing general propositions of criminal law are the so-called “public welfare” or “malum prohibitum” crimes which are punishable despite the absence of any criminal intent or criminal negligence. (People v. Calban (1976) 65 Cal.App.3d 578, 584 [135 Cal.Rptr. 441].)
The California Supreme Court has explained public welfare crimes in the following manner: “Under many statutes enacted for the protection of the public health and safety, e. g., traffic and food and drug regulations, criminal sanctions are relied upon even if there is no wrongful intent. These *Supp. 10 offenses usually involve light penalties and no moral obloquy or damage to reputation. Although criminal sanctions are relied upon, the primary purpose of the statute is regulation rather than punishment or correction. The offenses are not crimes in the orthodox sense, and wrongful intent is not required in the interest of enforcement. ” (People v. Vogel (1956) 46 Cal.2d 798, 801, fn. 2 [299 P.2d 850].)
In section 23001 of the Business and Professions Code, the Legislature has expressed the purposes of the alcoholic beverage control laws in the following language: “This Division is an exercise of the police powers of the State for the protection of the safety, welfare, health, peace, and morals of the people of the State, to eliminate the evils of unlicensed and unlawful manufacture, selling, and disposing of alcoholic beverages, and to promote temperance in the use and consumption of alcoholic beverages. It is hereby declared that the subject matter of this division involves in the highest degree the economic, social, and moral well-being and the safety of the State and of all its people. All provisions of this Division shall be liberally construed for the accomplishment of these purposes.”
In the light of the intent of the Legislature, we agree with the determination by the trial judge in the case at bench that Business and Professions Code section 23300 defines a regulatory offense that is punishable in the absence of criminal intent in the accepted sense. Although case law so holding is not of recent vintage, it is supportive of our conclusion. (See People v. Pera (1918) 36 Cal.App. 292, 304 [171 P. 1091]; People v. Bickerstaff (1920) 46 Cal.App. 764, 770-771 [190 P. 656]; People v. Frankovich (1923) 64 Cal.App. 184, 192 [221 P. 671].)
2. Appellants next contend that the trial judge erroneously refused to give, on behalf of appellants, CALJIC No. 4.35. The refused instruction is as follows:
“An act committed or an omission made under an ignorance or mistake of fact which disproves any criminal intent is not a crime.
“Thus a person is not guilty of a crime if he commits an act or omits to act under an honest and reasonable belief in the existence of certain facts and circumstances which, if true, would make such act or omission lawful.”
In requesting the foregoing instruction, appellants were following their theory that they could not be held for a violation of Business and Professions Code section 23300 in that they were relying upon the advice of their counsel, Ralph B. Saltsman, that they could legally utilize the catering permit that had been issued by the A.B.C. to appellant Locker for the sale of *Supp. 11 alcoholic beverages, in accordance with the written authorization of Locker that such utilization be made, and notwithstanding the revocation of the on-sale permit of “The Other Ball” by the A.B.C.
We agree with the refusal by the trial judge to give such requested instruction. As we have already said, as a matter of law, upon revocation of appellant Locker’s on-sale license, his caterer’s permit also became invalid and revoked.[3] Thus, the court properly instructed the jury:
“One who holds a caterer’s permit under an on-sale general license cannot legally sell alcoholic beverages under the caterer’s permit at any time during which his on-sale general license is not in force.”
The advice of counsel to the contrary is thus not a mistake of fact, but one of law. In their brief, appellants concede that mistake of law does not have an exculpatory effect. (See, also, CALJIC No. 4.36.)
Appellants next contend that the court committed instructional error with respect to its instruction defining “principals.”
The court instructed the jury as follows:
“The Persons Concerned in the Commission or Attempted Commission of a Crime Who Are Regarded by Law as Principals in the Crime Thus Committed or Attempted and Equally Guilty Thereof Include:
“Those Who Directly and Actively Commit or Attempt to Commit the Act Constituting the Crime, or Those Who, Whether Present or Not at the Commission or Attempted Commission of the Crime, Advise and Encourage Its Commission or Attempted Commission.”
The foregoing instruction constitutes a modification of CALJIC No. 3.00 (1979 rev.), which is as follows:
“The persons concerned in the commission or attempted commission of a crime who are regarded by law as principals in the crime thus committed or attempted and equally guilty thereof include:
“1. Those who directly and actively commit or attempt to commit the act constituting the crime, or
*Supp. 12 “2. Those who, with knowledge of the unlawful purpose of the one who does directly and actively commit or attempt to commit the crime, aid and abet in its commission or attempted commission, or
“3. Those who, whether present or not at the commission or attempted commission of the crime, advise and encourage its commission or attempted commission.
“[One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged.]”
An examination of the instruction as given by the court and CALJIC No. 3.00 indicates that the court struck from CALJIC No. 3.00 the second and fourth paragraphs pertaining to “aiders” and “abettors.”
Our review of the record on appeal herein indicates that there was ample evidence justifying the giving of the instruction in question with the excisions from CALJIC No. 3.00 that have been indicated, and that there was no legal error in so modifying the formula instruction.
3. Appellants next contend that the trial court erroneously denied their motion under the provisions of Penal Code section 1118.1 on the ground that there was insufficient evidence of their identities as the persons who had committed the offenses charged in the complaints.
In point of fact, the appellants had absented themselves from the trial with the approval of the trial judge, and without objection on the part of the People.
When the section 1118.1 motion was made, the court stated: “I don’t think the Defense can have the defendants excused and then raise the issue nobody has identified them.” When the court indicated to counsel that, in view of appellants’ motion, it intended to order appellants brought into court in order that the prosecution would have the opportunity “ . . . to see the people and identify them,” counsel for appellants withdrew his motion. In response to the withdrawal of the section 1118.1 motion, the court stated: “If that issue is not urged, that’s the end of that. The record will indicate that I had indicated I would order them to come in so the witnesses could either identify them or possibly could be unable to.”
In view of the abandonment of this issue by counsel for appellants in the court below, appellants are precluded from raising this issue on appeal.
*Supp. 13 Appellants’ final contention is that there was insufficient evidence to implicate appellant Locker in the unlicensed liquor sales at “The Other Ball,” from April 11, 1980, to April 17, 1980, as charged, and that the trial judge erroneously denied the section 1118.1 motion made in this context.
We disagree. Under Penal Code section 1118.1, the “ ‘trial court must apply the same test utilized by an appellate court in reviewing a judgment of conviction, i. e., whether there is substantial evidence of the existence of each element of the offense charged.’ ” (People v. Patino (1979) 95 Cal.App.3d 11, 27 [156 Cal.Rptr. 815].)
We concur in the position of respondent that there was substantial evidence from which the jurors could reasonably have inferred that appellant Locker was aware that the on-sale license of “The Other Ball” had been revoked on April 11, 1980, and that in order to continue to sell liquor on said premises, notwithstanding said revocation, he signed an authorization on April 11, 1980, purporting to permit the use of his catering license issued in connection with his Santa Monica premises, for such purpose. Clearly, all sales on the premises of “The Other Ball” made thereafter, were transactions for which he was legally responsible under the provisions of Business and Professions Code section 23300.
The judgments are affirmed.
Foster, P. J., and Reese, J., concurred.

Although certain of the findings of the People’s forensic chemist were challenged in the trial court, appellants raised no such issue on appeal.

The trial judge disagreed with the interpretation of Attorney Saltsman. The trial judge indicated that in his opinion a caterer’s permit under section 23399 of the Business and Professions Code was dependent upon the existence of a valid and unrevoked on-sale license. The trial judge correctly anticipated the holding of the Court of Appeal in Department of Alcoholic Beverage Control v. Locker, supra, 129 Cal.App.3d 381, in which the court held, at page 387: “Upon the revocation of appellants’ on-sale license, appellants’ caterer’s permit also became invalid and revoked.”

See footnote 2, ante.