[No. E035322. Fourth Dist., Div. Two. Jan. 7, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANCIS SPENCE, Defendant and Appellant.

**COUNSEL**

Larry Howard McBride, under appointment by the Court of Appeal, for Defendant and Appellant.

Grover Trask, District Attorney, and Elise J. Farrell, Deputy District Attorney, for Plaintiff and Respondent.

Rockard J. Delgadillo, City Attorney (Los Angeles), Debbie Lew, Assistant City Attorney, Katharine H. MacKenzie, Deputy City Attorney; and David LaBahn for California District Attorneys Association as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**RAMIREZ, P. J.**—As is pertinent here, a jury convicted Francis Spence (Spence) of driving without a valid driver's license. (Veh. Code, § 12500.)[1] He was granted probation.

We granted transfer of this case to this court upon certification by the Appellate Division of the Superior Court of Riverside County to address the following question: May a defendant be convicted of driving with an invalid driver's license in violation of section 12500 if he did not have actual knowledge that his license was suspended? (Cal. Rules of Court, rule 62.)

We conclude that he may, because section 12500 is a public welfare statute.

### FACTS

On January 30, 2001, Spence received a citation for a defective windshield or rear window. His driver's license was suspended on June 10, 2001, for failure to appear as promised on a citation or for failure to appear after a court continuance.[2] Notice of the suspension was sent to him on May 9, 2001, by certified letter, but the letter was returned unclaimed. The Vehicle Code mandates that drivers' addresses be updated within 14 days of their moving to a new address.[3] On November 22, 2001, when Spence was seen driving a vehicle, he did not have a valid license.

### DISCUSSION

1. *Sections 12500 and 14601 et seq.,[4] Their Precursors, and Documents Re Legislative Intent*

In 1913, the statutes provided that no one was to drive a motor vehicle after December 31 of that year, unless they had complied with the requirements of the act, which included section 23, providing for the obtaining of a driver's license. (Stats. 1913, ch. 326, § 23, pp. 649–651.)

---

[1] All further statutory references are to the Vehicle Code, unless otherwise indicated.

[2] Section 13365.

[3] Section 14600 requires notification within 10 days, but the 14-day period was testified to by the prosecution's witness.

[4] Those statutes prohibit driving while one's driving privilege is suspended or revoked.

The first sign of the split that later became sections 12500 and 14601 occurred in 1923. Section 58 of the statute provided that it was unlawful for anyone to drive unless licensed. (Stats. 1923, ch. 266, § 58, p. 531.) Section 74 provided that a driver whose license had been suspended or revoked was guilty of a misdemeanor, and it set forth the punishment for a violation of that section. (Stats. 1923, ch. 266, § 74, pp. 535–536.)

For our purposes, the next substantive change to these provisions came in 1935 when the Vehicle Code was created. (Stats. 1935, ch. 27, p. 93.) Section 250, subdivision (a) made it a misdemeanor for anyone to drive without having a *valid* license.[5] (Stats. 1935, ch. 27, § 250, p. 128.) Section 332 made it a misdemeanor for anyone to drive after the person's "license *or* his driving privilege" has been suspended or revoked. (Stats. 1935, ch. 27, § 332, p. 142, italics added.)

A 1937 amendment to section 332 expanded it to also cover those drivers who had been refused a license by the Department of Motor Vehicles (Department). (Stats. 1937, ch. 556, § 4, p 1591.)

A 1949 amendment to section 332 introduced the requirement that the driver know that his license or driving privilege had been suspended or revoked or that he had been refused a license by the Department. (Stats. 1949, ch. 273, § 5, p. 494.)

The People pointed out below, without contradiction by Spence, that legislative intent materials do not exist for any of the foregoing enactments.

In 1959, the existing Vehicle Code was repealed and reenacted. (Stats. 1959, ch. 3, p. 1523.) The existing section 250 became section 12500. (Stats. 1959, ch. 3, p. 1613.) The new provision omitted the requirement that the license be valid. It dropped the language that a violation of the section was a misdemeanor, and according to the Office of Legislative Counsel, this enactment made no substantive changes to the existing code. (Legis. Counsel, Rep. on Assem. Bill No. 5 (1959 Reg. Sess.) The existing section 332 became new section 14601, which, although somewhat reworded, was substantially the same. (Stats. 1959, ch. 3, p. 1633.)

The statutes of 1961 first introduced an increased punishment for a second violation of section 14601. (Stats. 1961, ch. 278, § 1, p. 1311.)

---

[5] Although Spence asserted in his opening brief that section 12500 was "designed to apply [only] to those who have not applied for a license in the first place or failed to renew," he conceded otherwise in his supplemental brief. Indeed, the addition of the word "valid" to the statute in 1935, and its resurrection in 1993 after it was dropped in 1959 to "close . . . a loophole in current law which has been used by some to avoid conviction by those [who] have suspended or revoked driving privileges" (see text) supports this. (Stats. 1993, ch. 1292, § 7, p. 7580.) Moreover, subdivision (c) of section 14607.4 clearly states that drivers who have not gotten a license pose a danger to public safety.

The 1963 statutes dropped from section 14601 the reference to drivers who have been refused a license. (Stats. 1963, ch. 155, § 1, p. 822.)

In 1968, section 14601 was revoked and a new version was enacted prohibiting driving while one's "driving privilege is suspended or revoked" for a list of driving offenses. (Stats. 1968, ch. 1195, § 7, p. 2270.) It added the presumption that knowledge by the driver that his privilege has been suspended or revoked applies if the Department had so notified the driver. (Stats. 1968, ch. 1195, § 7, p. 2270.) It created section 14601.1, which applied to any drivers whose privilege is suspended or revoked for any reason not listed in section 14601, and it utilized the same presumption as that latter section. (Stats. 1968, ch. 1195, § 8, p. 2271.)

Legislation in 1993 reinstated the pre-1959 requirement of section 12500 that the license be valid. (Stats. 1993, ch. 1292, § 7, p. 7580.) The Enrolled Bill Report of the Senate Committee on Transportation stated that this change "close[s] a loophole in current law which has been used by some to avoid conviction by those [who] have suspended or revoked driving privileges." (Sen. Com. on Transportation, Enrolled Bill Rep. on Sen. Bill No. 274 (1993–1994 Reg. Sess.) Sept. 7, 1993, p. 2.)

Legislation in 1994 made the presumptions applicable to sections 14601 and 14601.1 conclusive. (Stats. 1994, ch. 1133, §§ 7–8, pp. 6720–6721.) That year, the Legislature enacted provisions allowing the seizing of vehicles driven by drivers who did not have licenses. (Stats. 1994, ch. 1133, § 12, p. 6724.) The prelude to those provisions stated: "The Legislature finds and declares all of the following: [¶] (a) Driving a motor vehicle on the public streets and highways is a privilege, not a right. [¶] (b) Of all drivers involved in fatal accidents, more than 20 percent are not licensed to drive. A driver with a suspended license is four times as likely to be involved in a fatal accident as a properly licensed driver. [¶] (c) At any given time, it is estimated by the Department of Motor Vehicles that of some 20 million driver's licenses issued to Californians, 720,000 are suspended or revoked. Furthermore, 1,000,000 persons are estimated to be driving without ever having been licensed at all. [¶] (d) Over 4,000 persons are killed in traffic accidents in California annually, and another 330,000 persons suffer injuries. [¶] (e) Californians who comply with the law are frequently victims of traffic accidents caused by unlicensed drivers. These innocent victims suffer considerable pain and property loss at the hands of people who flaunt the law. The Department of Motor Vehicles estimates that 75 percent of all drivers whose driving privilege has been withdrawn continue to drive regardless of the law. [¶] (f) It is necessary and appropriate to take additional steps to prevent unlicensed drivers from driving . . . . The state has a critical interest in enforcing its traffic laws and in keeping unlicensed drivers from illegally

driving. Seizing the vehicles used by unlicensed drivers serves a significant governmental and public interest, namely the protection of the health, safety, and welfare of Californians from the harm of unlicensed drivers, who are involved in a disproportionate number of traffic incidents, and the avoidance of the associated destruction and damage to lives and property." (§ 14607.4, subds. (a)–(f); accord, *Tolces v. Trask* (1999) 76 Cal.App.4th 285, 290 [90 Cal.Rptr.2d 294]; *Shivell v. Municipal Court* (1961) 188 Cal.App.2d 333, 338 [10 Cal.Rptr. 283].)

■ The version of section 12500, under which Spence was prosecuted, provided, in pertinent part: "(a) No person shall drive a motor vehicle upon a highway, unless the person then holds a valid driver's license issued under this code." The current versions of sections 14601 and 14601.1 and the ones that existed when Spence committed his offenses provide, essentially, what they did in 1968, i.e., that one may not drive while one's driving privilege has been suspended or revoked.

■ As is evident from the foregoing, the two provisions[6] have coexisted, in varying forms, since 1923. To summarize, the express requirement of section 12500 and its precursors that the license *be valid* existed between 1935 and 1959 and was resurrected in 1993, the latter, according to documents on legislative intent, to "close a loophole in the law." The knowledge requirement of section 14601 et seq. and its precursors has existed, without substantive change, since 1949. " ' "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed." ' [Citations.]" (*People v. Kuhn* (1963) 216 Cal.App.2d 695, 699 [31 Cal.Rptr. 253] [opn. of this court].)[7]

### 2. *CALJIC No. 16.631*

CALJIC No. 16.631, which was given to this jury, provides: "It is not necessary for the People to introduce evidence that the defendant did not have a valid license to operate a motor vehicle. Whether the defendant was or was not properly licensed is a matter peculiarly within . . . his . . . own knowledge. The burden is on the defendant to raise a reasonable doubt as to . . . his . . . guilt of driving a motor vehicle upon a highway without being the holder of a valid driver's license."

---

[6] We include in our discussion of section 14601 or 14601 et seq., sections 14601.1, 14601.2 and 14601.5.

[7] In *Kuhn*, this court distinguished a statute making the willful failure to file a tax return with intent to evade a felony from another statute making the failure to file a return a misdemeanor, where the latter made no reference to willfulness and the failure was expressly with or without intent to evade. (*Id.* at pp. 699–700.) This court held both statutes to be valid. (*Ibid.*)

This instruction was approved in *People v. Goscinsky* (1921) 52 Cal.App. 62, 64–65 [198 P. 40] (*Goscinsky*), which involved practicing medicine without a license. That approval was based on, inter alia, the holding of *People v. Boo Doo Hong* (1898) 122 Cal. 606, 607–609 [55 P. 402] (*Boo Doo Hong*), that "the burden was upon the defendant to establish that he had a certificate to practice medicine as provided by law, and, if he failed to prove that he had such certificate, then it must be taken as true that he had not procured a certificate to so practice medicine. [¶] . . . [¶] . . . [T]here is a well recognized exception to the rule [that would require the People to prove that defendant practiced medicine without having a certificate to do so], where there is a negative averment of a fact which is peculiarly within the knowledge of the defendant. [¶] . . . '[In such a case,] the averment is taken as true unless disproved by th[e] party. Such is the case in . . . criminal prosecutions . . . for doing an act which the statutes do not permit to be done by any persons, except those who are duly licensed therefor . . . . Here the party, if licensed, can immediately show it without the least inconvenience; whereas, if proof of the negative were required, the inconvenience would be very great.' [Citations.] [¶] . . . [W]here a license would be a complete defense the burden is upon the defendant to prove the fact so clearly within his own knowledge.' [Citations.]" This rule originated in the days when the fact that a person did not hold a license could not be easily ascertained by the body that issues such licenses. *Boo Doo Hong* served as the basis for approval of the notion that the defendant had the burden of proving that he was licensed to practice dentistry (*People v. Fortch* (1910) 13 Cal.App. 770, 775 [110 P. 823]); that he was a citizen of the United States (*People v. Osaki* (1930) 209 Cal. 169, 182 [286 P. 1025]); that she had the right to possess a narcotic (*People v. Marschalk* (1962) 206 Cal.App.2d 346, 349 [23 Cal.Rptr. 743]); that he had a valid license to act as a carrier (*People v. Flores* (1976) 62 Cal.App.3d Supp. 19, 22 [133 Cal.Rptr. 759]); and that she had a valid permit to possess explosives and related items (*People v. Yoshimura* (1979) 91 Cal.App.3d 609, 626–629 [154 Cal.Rptr. 314]). *Goscinsky* was also based on *People v. Wah Hing* (1920) 47 Cal.App. 327 [190 P. 662], in which the defendant challenged his conviction for practicing medicine without a license on the basis that the People had failed to show that he did not have a "valid, unrevoked certificate from the state board of medical examiners." (*Id.* at p. 331.) The appellate court upheld the conviction, relying on the holding in *Boo Doo Hong*.

CALJIC No. 16.631, which applied the holding in *Goscinsky* to prosecutions under section 12500, first appeared in the fourth edition of CALJIC in 1979.

More recently, in *In re Shawnn F.* (1995) 34 Cal.App.4th 184, 197–199 [40 Cal.Rptr.2d 263] (*Shawnn F.*), the appellate court upheld the constitutionality of CALJIC No. 16.631 thusly, "[W]hen there are facts peculiarly and clearly

within the knowledge of the defendant, and the defendant can show the evidence without the least inconvenience, then the defendant is required to offer this proof. . . . [T]he legal writings relied on . . . offered license cases as examples. . . . [¶] . . . [¶] Driving without a valid driver's license is a negative averment just as possessing a controlled substance without a prescription has been held to be. Holding a valid driver's license is a matter within the defendant's personal knowledge and it would not be unduly harsh or inconvenient for a defendant to produce the license. The California Supreme Court in *Boo Doo Hong* specifically endorsed the rule in license cases. [¶] The one factor urged by [the defendant] as a reason not to apply the rule of convenience is that the People have ready access to driver's license records in California. We cannot ignore that much has changed since 1898 in technology and that access to particular types of information can often be achieved with little or no convenience in a very short period of time. Yet there is insufficient evidence before us from which we can determine how easily accessible and producible in admissible form this information is to the People. Because the Supreme Court's ruling in *Boo Doo Hong* continues to be good law, and because of the lack of evidence as to the People's access to driver's license information, we choose not to deviate from the well-established principle of applying the rule of convenience to cases involving licenses."

And, finally, the holding in *Shawnn F., supra,* 34 Cal.App.4th 184, was repeated and reaffirmed in *People v. Garcia* (2003) 107 Cal.App.4th 1159 [132 Cal.Rptr.2d 694], without reference to the language concerning the lack of evidence as to the People's access to driver's license information.[8]

### 3. *CALJIC No. 16.641*

CALJIC No. 16.641 applies to section 14601 et seq. and provides: "If the evidence establishes beyond a reasonable doubt that prior to the commission of the alleged offense herein, the defendant was given notice of the [suspension] [revocation] of [his] [her] driving privilege, either by personal delivery thereof to the defendant *or by the mailing of the notice, postage prepaid, addressed to the defendant at the address shown by the records of the Department of Motor Vehicles,* you may[9] infer that the defendant had

---

[8] Spence's attempt to distinguish *Shawnn F.* and *Garcia* on the basis that the drivers there did not have drivers' licenses, not that their licenses had been revoked or suspended, is meaningless, as section 12500 draws no such distinction. Moreover, we presume that, given current technology, and as it existed when those opinions were authored, the Department would be no more burdened determining that a driver had never been granted a license than it would determining that one's existing license was not valid.

[9] In *People v. Roder* (1983) 33 Cal.3d 491, 505–506 [189 Cal.Rptr. 501, 658 P.2d 1302], the California Supreme Court declared unconstitutional statutory mandatory rebuttable presumptions that had the effect of lightening the People's burden of proof in prosecutions for receiving stolen property and redrew them as permissible inferences. In response to this, CALJIC

knowledge of the fact of the [suspension] [revocation]. [¶] The People have the burden of proving that the defendant had knowledge of the [suspension [revocation] of [his] [her] driving privilege. If you have a reasonable doubt that the defendant had the required knowledge, you must find [him] [her] not guilty."[10] (Italics added.)

### 4. *In re Jorge M.*

In *In re Jorge M.* (2000) 23 Cal.4th 866 [98 Cal.Rptr.2d 466, 4 P.3d 297] (*Jorge M.*) the California Supreme Court determined whether a statute prohibiting the possession of certain unregistered assault weapons should be read to include a requirement that the defendant knew that the weapon he/she possesses had the features that made it a prohibited weapon. The court was called upon to determine if the prohibition was a public welfare offense, for which the Legislature would not intend that a knowledge or intent element apply. (*Jorge M., supra,* 23 Cal.4th at p. 872.) The court pointed out that many statutes enacted for the protection of the public, *like traffic regulations,* that involve light penalties and "no moral obloquy or damage to reputation" (*ibid.*) fall within this category. The court concluded that because of what it termed the "weighty penalty" for possession of a prohibited assault weapon, i.e., the crime is a felony/misdemeanor "wobbler," carrying a maximum term of three years in prison, or 25 years to life, if the defendant had suffered strike priors, it was not "patently true" that the primary purpose of the statute was regulation, rather than punishment or correction. (*Id.* at p. 873.) Because the wording of the statute itself did not make clear that its intent was to be primarily regulatory, and because of the severity of the punishment it provided, the court analyzed a number of factors relevant to the determination whether it was a public welfare offense.

Considering the maximum punishment awaiting someone convicted of driving without a valid license, i.e., it is an infraction/misdemeanor "wobbler" with the maximum term being six months in jail (Pen. Code, § 17,

---

No. 16.641 provided that the presumption of knowledge contained in sections 14601 and 14601.1 is permissible, rather than mandatory. (Com. to CALJIC No. 16.641 (Jan. 2004 ed.) p. 1126.)

[10] Thus, Spence's suggestion that the People carry the significant burden of proving that a license has been suspended or revoked in prosecutions under section 14601 et seq. is undermined by the existence of this instruction.

During oral argument, Spence ignored this court's attempt to draw his attention to that portion of CALJIC No. 16.641, which, we believe, disproves his suggestion. Of course, as Spence asserted at oral argument, the People have the burden of proving knowledge on the part of the defendant of the suspension or revocation in section 14601 et. seq. prosecutions, because those provisions contain *express* knowledge requirements. However, the significance of CALJIC No. 16.641 is that the jury in such cases may infer, merely by virtue of the fact that the Department mails a notice, postage prepaid, to the address shown by their records to be the defendant's, that the defendant had knowledge of the suspension or revocation.

subd. (d)),[11] our inquiry might well end at this point with the conclusion under *Jorge M.* that it is a public welfare offense.[12] Moreover, the language of Vehicle Code section 14607.4, quoted above, removes almost any doubt that Vehicle Code section 12500 is a public welfare statute. However, out of an abundance of caution, we proceed to examine the factors considered in *Jorge M.*

The first is the legislative history and context of the statute. The *Jorge M.* court pointed out that while it appeared that the prohibition on certain assault weapons was motivated by a public safety concern, many individuals asserted during the legislative process that it might be too broad if it covered weapons that had legitimate applications, like hunting and target practice. In fact, the law in its final version explicitly stated that it was not applicable to weapons with legitimate uses. It was then left to the owner to determine whether the weapon he/she possessed was one or the other. The court further noted that the legislative history revealed no intent to either include or exclude a knowledge requirement. In examining the prohibition's statutory context, the *Jorge M.* court pointed out that other courts had not uniformly required or rejected a knowledge requirement for other possessory offenses. The cases that did not require such knowledge, the court noted, involved weapons that, without exception, were used exclusively for nefarious purposes. The court concluded, "Nothing in the [statute in question] suggests the Legislature regarded the distinctions between [weapons with no legitimate use and those with] to be so patent and definite that innocent and unknowing possession of a restricted assault weapon would be particularly unlikely." (*Jorge M., supra,* 23 Cal.4th at p. 878.) It further pointed out that as to one group of weapons

---

[11] If charged as an infraction, the maximum punishment is a fine of $250. (Pen. Code, § 19.8.)

[12] Spence, for his part, waited until oral argument to present us with his own version of the "inquiry ender." Specifically, he asserts that because section 13106 provides that a rebuttable presumption of knowledge of suspension or revocation is created when the Department mails notice to the driver's address on file and *the notice has not been returned undeliverable or unclaimed,* the Legislature intended that actual knowledge be required as to any matters pertaining to suspension or revocation. We disagree. First, the same statute repeats the requirement of section 14600 that a driver notify the Department of any change of address. (Section 14600, as stated before, requires that this notification be done within 10 days.) What is clear from this provision is that the Legislature intended for Spence to notify the Department that he was no longer at the address to which his notice was sent, and for him to supply the Department with an address where he would have actually received such notification. Second, the existence of a rebuttable presumption in prosecutions where knowledge is clearly required cannot be construed as a message from the Legislature that knowledge is required in *all* prosecutions. The Legislature has had 88 years to amend section 12500 to include an express knowledge requirement. Its failure to do so indicates its intent that no such requirement exist. Finally, making this assertion at oral argument when the People have no opportunity to respond to it is unfair to them.

that lack legitimate use, i.e., machine guns, the statute governing them did not, on its face, require knowledge, but did if the weapons were being transported.

■ Unlike the prohibition in *Jorge M.*, section 12500 covers all individuals who drive without a valid license. Its statutory context is section 14601 et seq., which expressly contains a knowledge requirement, similar to the one governing machine guns noted in *Jorge M.*

■ Spence asserts that under the doctrine of preclusion, a more specific statute, which he asserts is section 14601 et seq., "governs" over a more general one, i.e., section 12500, suggesting that one may not be prosecuted under section 12500, but may be prosecuted under section 14601 et seq. However, the doctrine applies "where the general statute standing alone would include the same matter as the special act, and thus conflict with it, [in which case] the special act will be considered as an exception to the general statute . . . ." (*In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593].) However, section 12500 neither includes the same matter as section 14601 et seq., nor does it conflict with it. Rather, the two are like a number of penal statutes whose "general" form carries less punishment than one that carries an added element.[13] Moreover, in his supplemental brief, Spence concedes that one with a suspended or revoked license may be prosecuted under section 12500.

The second and third factors in *Jorge M.* concern a recognition that "at least where the penalties imposed are substantial, [the generally applicable rule that every offense contains either a mens rea or criminal negligence requirement] can fairly be said to establish a presumption against criminal liability without mental fault or negligence, rebuttable only by compelling evidence of legislative intent to dispense with mens rea entirely." (*Jorge M.*, *supra*, 23 Cal.App.4th at p. 879.) Applying this to section 12500, we note that the penalty for its violation is not substantial. As Spence himself points out, violations of section 14601 et seq., in contrast, carry *mandatory minimum* jail sentences of five days and mandatory minimum fines of $300, with the same maximums as section 12500. This is for a first violation. Subsequent violations of those sections carry greater punishments. Section 12500, on the other hand, has no recidivist provisions.

The next factor is the seriousness of harm to the public. As *Jorge M.* noted, "when a crime's statutory definition does not expressly include any scienter element, the fact the Legislature intended the law to remedy a serious and

---

[13] In their supplemental brief, the People point out that in some jurisdictions, driving without a valid license is considered a lesser included offense of driving while a license has been suspended or revoked. In others, the two are considered to have different elements.

widespread public safety threat militates against the conclusion it also intended impliedly to include in the definition a scienter element especially burdensome to prove." (*Jorge M., supra,* 23 Cal.4th at p. 881.) Although the public safety motivation behind section 12500 is so apparent that further comment about it is unnecessary,[14] Spence contends that decisional law suggests that its purpose is generally not to ensure public safety. In support, he cites *Wysock v. Borchers Bros.* (1951) 104 Cal.App.2d 571, 582 [232 P.2d 531].[15] In *Wysock,* the defendants in a civil suit who had been adjudged to be at fault in a traffic accident claimed that the trial court erred in allowing the solicitation of evidence that their driver had not been licensed. (*Id.* at p. 580.) The appellate court held, "The nonpossession of a[] . . . license is not of itself proof that a person is an incompetent or a careless driver. He may be exceedingly competent and careful but may have neglected for a few days or weeks to renew his license. . . . Or, he may be a person of whom a license is not required [under the provisions of the Vehicle Code]. . . . [¶] Indeed, the refusal, suspension, or revocation of a license does not necessarily token an administrative determination that the [driver] is negligent or incompetent. . . . [¶] . . . [¶] Nothing that we have found in the statutory law indicates an intent upon the part of the Legislature to establish the possession of a[] . . . license as a minimum standard of care in the operation of a motor vehicle or to create a presumption of negligence if one drives without such a license or to make unlicensed driving evidence of negligent operation of a vehicle. . . . The reasonable inference is that *this licensing feature, while designed to promote safe driving* upon the highways, *is a device for the more efficient enforcement of the many and varied police regulations* that govern the use of the highways." (*Id.* at pp. 582–583, italics added.) Spence asserts that the italicized language should be construed as meaning that section 12500 serves no overwhelming public safety purpose. We conclude that the language suggests just the opposite, as does section 14607.4, quoted above.

The next *Jorge M.* factor begins with the premise that the offense carries a substantial penalty. (*Jorge M., supra,* 23 Cal.4th at p. 881.) It involves determining whether the prohibited conduct is such that its illegality would be obvious to the offender. (*Ibid.*) In other words, if the activity has long been considered legal, or if it is so similar to historically legal activity that it is difficult to distinguish the two, it is more likely that a knowledge requirement

---

[14] We again refer to the language of section 14607.4, quoted in the text.

[15] He also cites *Strandt v. Cannon* (1938) 29 Cal.App.2d 509, 517–518 [85 P.2d 160], which condemned a jury instruction that the nonpossession by an injured civil plaintiff of a driver's license was prima facie evidence that the plaintiff was incompetent and, by virtue of that fact, could not prevail in a lawsuit. Spence also cites *Shmatovich v. New Sonoma Creamery* (1960) 187 Cal.App.2d 342 [9 Cal.Rptr. 630], overruled on other grounds in *Prichard v. Veterans Cab Co.* (1965) 63 Cal.2d 727, 732 [47 Cal.Rptr. 904, 408 P.2d 360], which relied on, inter alia, *Wysock v. Borchers Bros., supra,* 104 Cal.App.2d 571, and *Strandt* for the rule that lack of a driver's license is not evidence of the negligence of the driver.

would be read into the statute. The essence of this factor appears to be more in the realm of notice to the offender. Spence contends that a driver who had not received notice of a revocation or suspension would not necessarily know that his or her license was invalid. However, every driver is chargeable with knowledge of those portions of the Vehicle Code upon which he or she is subject to being examined in order to obtain and renew a license.[16] Those portions list the circumstances under which licenses are revoked or suspended and these circumstances require some action or inaction on the part of the driver.[17] Section 12500 does not carry a substantial penalty. Drivers are chargeable with knowledge of the circumstances under which their licenses may be revoked or suspended, and those that have no license to begin with are certainly aware of this reality. These factors militate in favor of not reading a knowledge requirement into the statute.

The next factor concerns the difficulty of proof for the prosecution of any knowledge requirement read into the statute. (*Jorge M., supra*, 23 Cal.4th at pp, 884–886.) Applying this to section 12500, we note the existence of CALJIC No. 16.631 and its decisional law roots, both discussed above. We also note that, historically, knowledge or intent has never been read into statutes concerning the possession of a license or possession of a valid license by those who practice medicine or dentistry or who sell alcoholic beverages. (*Khan v. Medical Board* (1993) 12 Cal.App.4th 1834, 1845 [16 Cal.Rptr.2d 385]; *Anderson v. Board of Dental Examiners* (1915) 27 Cal.App. 336 [149 P.

---

[16] Moreover, as the Supreme Court noted in *Jorge M.*, "all persons are obligated to learn of and comply with the law . . . ." (*Jorge M., supra*, 23 Cal.4th at p. 885.)

[17] Spence points out that *In re Murdock* (1968) 68 Cal.2d 313 [66 Cal.Rptr. 380, 437 P.2d 764], held that a defendant's failure to notify the Department of his new address as required by law, resulting in the failure of the Department's notice that his license had been suspended to reach him, did not automatically make him liable under section 14601 et seq. However, we note that the same year *Murdock* was decided, the provision was enacted that knowledge of the suspension or revocation of a license shall be presumed where the department gave notice. (Stats. 1968, ch. 1195, § 7, p. 2270.) In 1994, this provision was changed to state that knowledge is conclusively presumed if mailed notice was given by the Department pursuant to section 13106. (Stats. 1994, ch. 1133, § 7, p. 6720.) CALJIC No. 16.641, quoted above, provides that notice sent by the Department to the address of the licensee shown by Department records is sufficient to raise the presumption that the driver had knowledge of the suspension or revocation. The latter undermines Spence's assertion that "the legislature understands that notice sent is not always notice received."

Spence's assertion, in his reply brief, that a driver has no obligation to daily check with the Department to ensure that his license is still valid, and such an obligation would be too burdensome, is disingenuous. Drivers are aware that they commit or fail to perform certain acts and they are chargeable with knowledge that these acts or omissions may result in the suspension or revocation of their licenses. Thus, they have notice that their driving privileges are in jeopardy, even if they do not receive actual notice of revocation or suspension, without the "paranoid" need, as Spence puts it, to contact the Department daily.

1006]; *People v. Guinn* (1983) 149 Cal.App.3d Supp. 1, 10 [196 Cal.Rptr. 696].)[18]

The last factor encompasses a consideration of the number of prosecutions anticipated under the law. In *Jorge M.,* the California Supreme Court said of this factor, "[O]ur construction should not impose a scienter requirement that would unduly impede the ability to prosecute substantial numbers of violators." (*Jorge M., supra,* 23 Cal.4th at p. 887.) While acknowledging that "[p]rosecutions for [section] 12500 violations number in the tens of thousands throughout the state each year," Spence attempts to turn this factor inside out by asserting that the large number of prosecutions means that we should read a scienter requirement into the law to prevent those tens of thousands who do not know that their licenses have been revoked or suspended from being prosecuted. This approach runs contrary to the analysis in *Jorge M.*

## 5. *Due Process*

■ Spence cites *People v. Garcia* (2001) 25 Cal.4th 744 [107 Cal.Rptr.2d 355, 23 P.3d 590] (*Garcia*), in support of his assertion that due process requires that a knowledge element be read into section 12500. In *Garcia,* the defendant was convicted of willfully failing to register as a sex offender. (*Garcia, supra,* 25 Cal.4th at p. 747.) Garcia's defense was that he was unaware of his duty to so register. (*Ibid.*) The California Supreme Court held that a defendant must have actual knowledge of this duty, based on the requirement in the statute that the defendant willfully failed to act. (*Id.* at pp. 747, 752.) Elaborating, the court said, "The word 'wilfully' implies a 'purpose or willingness' to make the omission. [Citation]. Logically one cannot purposefully fail to perform an act without knowing what act is required to be performed. . . . '[T]he term "willfully" . . . imports a requirement that "the person knows what he is doing." [Citation.] Consistent with that requirement, . . . knowledge has been held to be a concomitant of willfulness. . . .' " (*Id.* at p. 752.) The *Garcia* court quoted *Lambert v. California* (1957) 355 U.S. 225, 227 [2 L.Ed.2d 228, 78 S.Ct. 240, 242] (involving registration for convicted felons), as follows: " 'Many [registration] laws are akin to *licensing statutes* in that they pertain to the regulation of business activities. But the [registration act at issue] is *entirely different.* Violation of its provisions is *unaccompanied by any activity whatever,* mere presence in the [place where the registration requirement exists] being the test. . . .' " (*Garcia, supra,* 25 Cal.4th at p. 753, italics added.) This language

---

[18] At oral argument, Spence asserted that licensing provisions in other codes have no relevance whatsoever to section 12500. We disagree. All these provisions exist to protect the public. Moreover, the fact that CALJIC No. 16.631 is derived directly from cases involving licenses other than those provided for in the Vehicle Code demonstrates that the latter are not irrelevant to section 12500.

from *Lambert* defeats, rather than supports, Spence's due process argument, as does *Garcia*'s reliance on its statute's requirement of willfulness. Section 12500 does not punish one for merely existing without having a valid driver's license—it punishes one who *drives* without such a license. Moreover, it does not contain a willfulness requirement.[19]

DISPOSITION

The judgment is affirmed.

McKinster, J., and Richli, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 13, 2005.

---

[19] See footnote 7, *ante.*